## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

---------------------------------------------------------- x
In re:                                                     :    Chapter 11
                                                           :
FREEDOM INDUSTRIES, INC.,                                  :    Case No. 14- 20017
                                                           :    Related to Docket No. 3
           Debtor.                                         :
                                                           :    The Honorable Ronald G. Pearson
---------------------------------------------------------- x

## INTERIM AGREED ORDER AUTHORIZING
## DEBTOR-IN-POSSESSION FINANCING

**This matter is before the Court upon** the *Emergency Motion for Interim and Final Order Authorizing Debtor-in-Possession Financing* (the "Financing Motion")[1] [Docket No. 3] filed by Freedom Industries, Inc. ("Debtor" or "Borrower"), as debtor and debtor-in-possession seeking, *inter alia*, pursuant to Sections 105, 361, 362(a), 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following:

(i)   authority for the Debtor to obtain post-petition credit from WV Funding LLC ("Lender") disbursed in installment advances from time to time, up to an

---

[1] Capitalized terms not specifically defined herein shall have the meaning ascribed to them in the DIP Agreement.

{P0156496.1}                                      1

aggregate principal amount outstanding not to exceed $5,000,000 at any time (the "Maximum Commitment Amount"), and including, without limitation, principal, interest, fees, expenses, and other costs of Lender in accordance with the terms and conditions set forth herein and in the attached Debtor-in-Possession Term Loan Agreement (the "DIP Agreement")[2] and all related documents (collectively, the "DIP Facility");

(ii)  authority for the Debtor to execute, deliver and perform under the DIP Facility and the Loan Documents on account of the DIP Facility and granting or perfecting liens or security interests by the Debtor in favor of Lender on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the documents currently executed or to be executed in connection therewith or related thereto.

(iii) approval of the terms and conditions of the DIP Facility and the Loan Documents as so executed and delivered;

(iv)  modification of the automatic stay of Bankruptcy Code § 362 (the "Automatic Stay") to the extent provided herein;

(v)   granting of liens and super priority administrative claims to Lender as adequate protection to Lender in respect of the DIP Facility.

---

[2] A copy of the DIP Agreement is attached hereto as Exhibit "1", and incorporated herein as if set forth in its entirety. Any conflict between the DIP Agreement and this Interim Order shall be governed by the terms and conditions of this Interim Order.

{P0156496.1}                                 2

1. The Debtor and Lender have represented to the Court that they have agreed in good faith to the terms and conditions of this *Interim Agreed Order Authorizing Debtor-in-Possession Financing* (this "Interim Order"). This Court grants the relief herein pursuant to Bankruptcy Rule 4001(b) to facilitate the Debtor's efforts to reorganize in this Chapter 11 Case. Therefore, consistent with Bankruptcy Code §§ 105, 361, 362 and 364, this Court hereby finds, concludes and orders:

## BINDING AGREEMENT

2. The agreements and arrangements authorized in this Interim Order have been negotiated at arm's length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The Debtor and Lender have acted in good faith in the negotiation and preparation of this Interim Order and the Loan Documents, have each been represented by independent counsel, and intend to be and are bound by its terms. The terms of this Interim Order reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

## STATEMENT OF JURISDICTION

3. This Court has jurisdiction over this Chapter 11 Case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## NOTICE

4. Sufficient and adequate notice of the Financing Motion for purposes of the Interim Order has been given pursuant to Bankruptcy Rules 2002, 4001, and 9006, and as required by Bankruptcy Code §§ 105, 361, 362 and 364. No further notice of, or hearing on, the relief granted in this Interim Order is necessary or required. Further notice of a final hearing on the Financing Motion and presentment of a Final Order will be provided as set forth below. The

relief granted hereunder is necessary to avoid immediate and irreparable harm to the Debtor, its bankruptcy estate and creditors, and is thus approved and may be acted upon immediately following entry of this Interim Order.

## FACTUAL AND PROCEDURAL BACKGROUND

5. On January 17, 2014, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 Case. The Debtor continues in the management and possession of its business and property as Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6. On January 21, 2014, the Court conducted an interim evidentiary hearing on the Financing Motion and pronounced interim approval of the Financing Motion. Several objections to the Motion were filed with the Bankruptcy Court, and those objecting parties as well as other parties in interest were permitted by the Bankruptcy Court to make argument against the Motion being granted and permitted to cross-examine witnesses presented by the Debtor.

7. No official committee of unsecured creditors has been appointed in this Chapter 11 Case as of the date of this Interim Order.

## DIP FACILITY

### Need for DIP Facility

8. Without the use of the DIP Facility, the Debtor will not have the funds necessary to maintain its assets, pay necessary employees, payroll taxes, charges of vendors, overhead, and other expenses (including without limitation, those relating to environmental remediation and maintenance) necessary to maximize the value of the Debtor's assets. The use of the DIP Facility is actual and necessary to preserving the Debtor and its bankruptcy estate. Lender is willing to provide the DIP Facility to and for the benefit of the Debtor only in accordance with the terms of the Loan Documents, including this Interim Order.

9. The Debtor has requested that Lender provide the DIP Facility in order to provide funds to be used for the purposes set forth in the Budget, and such other purposes as required by this Interim Order and to which Lender consents in writing.

10. Under the present circumstances of the Debtor, it is unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a) and (b), and no source of credit for the Debtor other than the DIP Facility exists at this time. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The extension of credit by Lender as provided under the terms and conditions in the DIP Agreement and this Interim Order is actual and necessary to preserving the Debtor and its bankruptcy estate.

### Authorization to Obtain Credit

11. The Debtor is hereby authorized on a limited basis to obtain credit only in accordance with the DIP Agreement, the Budget and this Interim Order.

12. The Debtor is hereby authorized to borrow an amount not to exceed $3,000,000 in principal amount on an interim basis pursuant to the terms of this Interim Order and the terms of the DIP Agreement, solely for the purpose of paying those items on a timing and line-item basis as provided in the Budget or otherwise due under the DIP Facility as and when they come due.

### Super-Priority Administrative Claims

13. On account of the DIP Facility, pursuant to Bankruptcy Code § 364(c)(1), Lender is hereby granted super-priority administrative claims senior in right to all other administrative claims against the estate, (other than the Carve Out including but not limited to claims arising under Bankruptcy Code §§ 507(b) and 503(b)(1)).

## CONDITIONS TO LENDING

14. In consideration of the financing provided for herein and in the DIP Agreement, the Debtor shall use advances under the DIP Facility only to (i), reimburse Lender costs and expenses as provided herein; and (ii) make payments in accordance with the Budget attached hereto as <u>Exhibit "2"</u>, with allowable Budget overage variances of up to 15% of the sum of total disbursements on a cumulative basis from the date of entry of this Interim Order to the particular week, beginning in week 3 of the forecast period (the "<u>Budget</u>"). For purposes of clarity only variances relating to expenditures will be measured under the Budget.

15. Lender's agreement to extend credit extends only to (i) amounts due under the DIP Facility, and (ii) budgeted amounts on a line item basis actually expended in accordance with the Budget. Upon the occurrence of an Event of Default or the Maturity Date, Lender's agreement to extend credit to satisfy projected, budgeted expenditures, shall be immediately terminated and deemed withdrawn.

16. The Budget may be modified in writing only with the prior written consent of the Lender, in its sole and absolute discretion, provided further, that notice of such modification to the Budget is filed of record with the Bankruptcy Court.

### Automatic Perfection

17. This Interim Order and the Loan Documents shall be sufficient and conclusive evidence of the priority, and validity of Lender's super-priority claim.

### Authorization to Act

18. The Debtor is hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as Lender may reasonably require or that may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Interim Order and the DIP Facility.

{P0156496.1}

19. Until the DIP Facility is indefeasibly paid and satisfied in full by its terms, and without further order of the Court: (a) the Debtor shall use the DIP Facility proceeds strictly in accordance with the terms of the Budget requirements and other terms of this Interim Order; (b) the Debtor shall not, without prior written approval from the Bankruptcy Court, engage in any transaction that is not in the ordinary course of the Debtor's business, and (c) the Debtor shall timely comply with all of the covenants set forth in the Loan Documents. Funds advanced under the DIP Facility may not be transferred, loaned, or contributed to, or otherwise used or expended on behalf of any affiliates of the Debtor other than as contemplated by the Budget.

## No Additional Liens

20. Until the DIP Facility is fully satisfied by its terms, the Debtor shall not be authorized to obtain credit secured by a lien or security interest in assets of the Debtor absent prior written consent of Lender. Once the DIP Facility has been fully satisfied by its terms, the Debtor may be authorized to obtain credit secured by a lien or security interest in assets of the Debtor only Court order entered after notice and hearing.

## No Liability

21. From and after the Petition Date, to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court, no act committed or action taken by Lender, its agents, officers, directors, members, affiliates or lawyers under this Interim Order or the DIP Facility shall be used, construed, or deemed to hold Lender to be in "control" of or participating in the governance, management, or operations of the Debtor for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtor or its business (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive

Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Lender under the Loan Documents or this Interim Order including, without limitation, such rights and remedies as may be exercisable by Lender in connection with this Interim Order, except that this Paragraph shall apply to environmental liabilities only so long as the actions of the [lender parties] do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtor, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.

### Automatic Stay

22. The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtor and Lender to commit all acts and take all actions necessary to implement the DIP Facility and this Interim Order, and (b) all acts, actions, and transfers contemplated herein, including, without limitation, indefeasible transfers of funds to Lender by the Debtor, if any, and the application by Lender of same as provided herein.

### Collateral Insurance, Maintenance, Taxes, and Deposits

23. In accordance with the Budget, the Debtor shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Debtor's assets.

24. Upon receipt of notification (written or oral) that an insurance policy issued prior to the Petition Date covering any of the Debtor's assets will not be renewed by the respective carrier, the Debtor will immediately notify Lender in writing of such occurrence, and thereafter provide Lender with the status of all negotiations, if any, regarding such policy on a weekly basis.

25. The Debtor shall make any and all payments reasonably necessary to keep the Debtor's assets in good repair and condition and not permit or commit any waste thereof. The Debtor shall exercise its business judgment and, in so doing shall preserve, maintain, and continue all patents, licenses, privileges, franchises, certificates and the like reasonably necessary for the operation of its business.

26. The Debtor verifies to the best of its knowledge and belief that all payments to all taxing authorities with respect to the DIP Collateral are current at the present time, except as otherwise disclosed to Lender in writing by the Debtor.

### Fees, Costs and Expenses of Lender

27. During the Chapter 11 Case, all reasonable fees, costs, and expenses, including attorneys' fees and expenses, that are incurred by Lender (prior to or following the Petition Date) as a result of the Debtor's Chapter 11 Case in connection with the DIP Facility, including but not limited to fees and costs associated with documenting, enforcing and collecting on the DIP Facility ("Lender Costs"), shall be paid by the Debtor out of the DIP Facility advances, on a monthly basis. In order to facilitate tracking of Lender's Costs by the Debtor, counsel for the Lender will provide from time to time (but not less than once each month with respect to the prior month) the amount of its fees and expenses so paid under this paragraph to (i) counsel for the Debtor, and the (ii) United States Trustee.

28. Such payment shall not constitute satisfaction of any fees of such professionals other than those actually paid. Any reasonable fees and expenses of Lender that are paid pursuant to the foregoing Lender's Cost procedure shall be deemed allowed without further Order of this Court, unless the Debtor or United States Trustee objects to such Lender Costs based on reasonableness within twenty (20) days of the payment of same.

## Surcharge Protection

29. No costs or expenses of administration or other costs or expenses of the Debtor or its bankruptcy estate that have been or may be incurred in the Chapter 11 Case, or other proceedings or matters related hereto, shall be charged against Lender pursuant to Bankruptcy Code §§ 506(c), 552 or otherwise (the "Surcharge Protection"). No obligations incurred or payments or other transfers made by or on behalf of the Debtor pursuant hereto or on account of the DIP Facility shall be avoidable or recoverable from Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

## Carve Out

30. For purpose of this Interim Order, the "Carve Out" means (i) regardless of default the unpaid fees and interest due and payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) all reasonable fees and expenses incurred by Debtor prior to an Event of Default; and (iii) after the occurrence of an Event of Default as defined in this Interim Order, the payment of allowed and unpaid professional fees and disbursements incurred after the occurrence of such Event of Default by the Debtor in an amount not to exceed $300,000 (other than any such fees and disbursements incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against Lender, *provided* (a) the dollar limitation in this clause on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid before the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the Lender or their respective attorneys and agents, and (b) the nothing

{P0156496.1}                                    10

herein shall be construed to prejudice any objection to any of the fees, expenses, reimbursement or compensation described above.

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

31. The occurrence of any of the following shall constitute an Event of Default under this Interim Order: (a) any default, violation, or breach of any of the terms of this Interim Order or the Loan Documents by the Debtor upon five (5) days written notice from Lender to the Debtor and the United States Trustee; (b) the occurrence of the Maturity Date, termination, expiration, or non-renewal of this Interim Order or the DIP Facility as provided for herein or in the Loan Documents; (c) the non-payment by the Debtor of principal, interest, or any fee or other amount due under the DIP Agreement after such amount becomes due and payable; (d) the Debtor shall breach or violate any covenant or agreement contained in the Loan Documents; (e) the conversion of the Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (f) the dismissal of the Debtor's Chapter 11 Case; (g) the entry of any order reversing, revoking, staying, rescinding, or vacating this Interim Order without the express prior written consent of Lender; (h) any security interest, lien, claim, or encumbrance other than liens existing as of the Petition Date, shall be granted in any of the Debtor's assets; (i) the Debtor shall attempt to vacate or modify this Interim Order over the objection of Lender; (j) any challenge by the Debtor to the extent, validity, priority, or unavoidability of Lender's claim relating to the DIP Facility; (k) any provision of the Loan Documents shall cease to be valid and binding on the Debtor, or the Debtor shall so assert in any pleading filed with any court; (l) a break in the Debtor's exclusive period to file a plan of reorganization of liquidation as provided in Bankruptcy Code § 1121(b) and (p) any other Event of Default under the Loan Documents (any

{P0156496.1}                    11

of the foregoing events of default, being referred to in this Interim Order, individually, as an "Event of Default", or severally, as "Events of Default").

### Remedies

32. Upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender, with such notice likewise being filed of record with the Bankruptcy Court; (a) Lender may declare all or any part of the DIP Facility immediately to be accelerated and due and payable for all purposes, rights, and remedies, (b) Lender's obligations in connection with the DIP Facility shall immediately terminate, and (c) with the exception of funding the Carve Out, any and all obligations of Lender under this Interim Order shall terminate. Notwithstanding anything to the contrary contained herein, Lender shall have no obligation to make any advances under the DIP Facility unless all terms and conditions of the DIP Agreement are satisfied at the time of such advance, including, but not limited to, those conditions precedent contained in the DIP Agreement.

33. Furthermore, (i) upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender, with such notice likewise being filed of record with the Bankruptcy Court, and (ii) upon entry of an order granting Lender relief from the Automatic Stay (if and to the extent necessary), then Lender shall be entitled to pursue all rights and remedies in accordance with applicable law in connection with the DIP Facility, provided that Lender may not take any action that would result in a lien on assets of the Borrower securing the Loan. Upon the occurrence of any Event of Default, Lender shall be entitled to seek, on an expedited basis, relief from the Automatic Stay.

34. Upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender and such notice having been filed of record with the Bankruptcy Court, Lender shall not be obligated to, but may, in its sole and absolute discretion, continue advance funds to the Debtor, and all such advance(s) (i) shall not constitute a waiver, limitation, or modification of Lender's rights and remedies pursuant to the Loan Documents and under applicable law, and (ii) shall be and hereby are granted all of the protections granted to Lender under this Interim Order in connection with the DIP Facility.

## OTHER TERMS

35. Until the DIP Facility is fully satisfied by its terms, the Debtor shall not file or support any motion, application or other pleading which seeks to obtain approval of any claims or liens that are or will be prior to or on a parity with the super-priority claims of Lender against the Debtor and its bankruptcy estate arising out of the Loan Documents and this Interim Order absent prior written consent of Lender. Further, no priority claims shall be allowed that are or will be prior to or on a parity with the super-priority claims or secured claims of Lender against the Debtor and its estate arising out of the Loan Documents and this Interim Order absent prior written consent of Lender or Court order entered after notice and hearing

36. Except as contemplated by the Budget and in the ordinary course of business, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any of its assets, without the prior written consent of Lender.

37. All post-petition advances under the DIP Agreement are made in reliance on this Interim Order, and so long as such advances remain unpaid, the Debtor shall not file or support any motion, application or other pleading, except as shall cause or permit payment of such advances in full or be consented to in writing by Lender (a) which seeks to authorize the sale,

lease, or other disposition of substantially all of the Debtor's assets, (b) which seeks to authorize the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in the Debtor's assets unless Lender's super-priority claim granted hereunder is paid in full and satisfied, or (c) which seeks to grant any claim a priority administrative claim status that is equal or superior to the super-priority status granted to Lender herein. Further, so long as such advances remain unpaid, the Debtor may not file or support any motion, application or other pleading that is inconsistent with this Interim Order or the Loan Documents.

38. The terms hereunder and under the Loan Documents, and the rights of Lender pursuant to this Interim Order with respect to the DIP Facility shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor absent prior written consent of Lender.

39. The terms and provisions of this Interim Order and any actions taken pursuant hereto, shall survive entry of any order that may be entered converting to Chapter 7 or dismissing the Chapter 11 Case. The terms and provisions of this Interim Order, as well as the priorities in payment, granted pursuant to the Loan Documents and this Interim Order, shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, shall maintain their priority as provided by this Interim Order until the DIP Facility is indefeasibly paid and satisfied in full by its terms and discharged and Lender shall have no further obligation or financial accommodation to the Debtor, provided that the super-priority claim of Lender granted herein, shall not have priority over any Chapter 7 administrative expenses to the extent approved by this Court.

40. The provisions of this Interim Order shall inure to the benefit of the Debtor and Lender, and they shall be binding upon (a) the Debtor and its respective successors and assigns,

Case 2:14-bk-20017    Doc 69    Filed 01/24/14    Entered 01/25/14 00:18:32    Desc Main
Document      Page 15 of 19

including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtor or with respect to property of the bankruptcy estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code, any confirmed plan of reorganization or liquidation, or any subsequent Chapter 7 case, and (b) all creditors of the Debtor and other parties in interest.

41. If any or all of the provisions of this Interim Order are hereafter modified, vacated, terminated, expired or stayed, such modification, vacation, termination, expiration or stay shall not affect (a) the validity of any obligations incurred by the Debtor to Lender before the effective date of such modification, vacation, termination, expiration or stay or (b) the validity or enforceability of any priority or other protection authorized, created, or confirmed hereby or pursuant to the Loan Documents. Notwithstanding any such modification, vacation, termination, expiration or stay, any obligations incurred by the Debtor to Lender before the effective date of such modification, vacation, termination, expiration or stay shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and pursuant to the Loan Documents with respect to all such obligations.

42. To the extent the terms and conditions of the DIP Agreement are in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

43. No approval, agreement, or consent requested of Lender by the Debtor pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of Lender other than a writing acceptable to Lender that is signed by Lender and expressly shows such approval, agreement or consent.

44. Nothing herein shall be deemed or construed to waive, limit, vacate, terminate or modify the rights of Lender to seek other relief in the Chapter 11 Case in accordance with any provision of the Bankruptcy Code or applicable law.

45. Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify, vacate, terminate, or prejudice the claims, rights, protections, privileges and defenses of Lender afforded pursuant to Title 11 of the United States Code including, without limitation, those claims, rights, protections, privileges and defenses afforded Lender pursuant to the Bankruptcy Code.

46. This Interim Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by Lender and the Debtor without the necessity of entry into the docket sheet of the Chapter 11 Case. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

47. This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection therewith.

48. All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms herein.

## NOTICE

49. The Debtor's counsel shall serve this Interim Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for Lender; (c) all creditors known to the Debtor who have or may assert liens against the Debtor's assets; (d) the United States Internal Revenue Service; (e) the holders of the twenty (20) largest liquidated general unsecured claims and (f) all parties in interest who have filed a notice of appearance or upon whom service

{P0156496.1}                                    16

must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Southern District of West Virginia.

50. Any notice, objection, report, or other document required to be given hereunder shall be deemed given upon its filing with the clerk of the Bankruptcy Court and its deposit in the United States mail, postage pre-paid, and addressed as follows:

If to Lender:

WV Funding LLC
c/o Phillips, Gardill, Kaiser & Altmeyer, PLLC
61 Fourteenth Street
Wheeling, WV 26003
ATTN: Denise Knouse-Snyder
Email: denisesnyder@pgka.com
   Charles J. Kaiser, Jr.
Email: cjkaiser@pgka.com

if to the Debtor:

Freedom Industries, Inc
c/o Gary Southern
1015 Barlow Drive
Charleston, WV 25311
Email: gsouthern@freedom-industries.com

with a copy to:

Mark E. Freedlander
Michael J. Roeschenthaler
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Email:
mfreedlander@mcguirewoods.com
mroeschenthaler@mcguirewoods.com

## EXPIRATION DATE/MATURITY

51. Lender's commitment to provide credit under the DIP Agreement and this Interim Order, subject to the funding and Budget limitations above, shall be effective upon entry of this Interim Order to and including the earlier of: (a) notice of the occurrence of an Event of Default, or (b) twenty (20) days from the date of entry by the Court of this Interim Order (the "Expiration Date").

52. Nothing in this Order or the DIP Documents shall relieve the Debtor of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b). Nothing in this Final Order or the DIP Documents shall impair or adversely affect any claim of any governmental unit with respect to any insurance proceeds for liabilities under environmental laws to the extent not permitted by applicable law. As to the United States, any State or municipality and any of the foregoing's respective agencies, departments or agents, nothing in this Final Order or the DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have. Nothing in the Order or the DIP Documents impairs or adversely affects any right of a governmental unit under financial assurance instruments provided by the Debtor to comply with non-bankruptcy law." Other than with respect to the first sentence of this paragraph, all rights and defenses of the Debtor and its bankruptcy estate with respect to the foregoing reservations by the United States and any State are reserved.

53. THE FINANCING MOTION, DIP AGREEMENT AND LOAN DOCUMENTS ARE HEREBY APPROVED AND THE FINANCING MOTION IS GRANTED ON AN INTERIM BASIS AS SET FORTH HEREIN. FOR PURPOSES OF CLARITY, ALL RELIEF GRANTED UNDER THIS INTERIM ORDER, OTHER THAN THE PROTECTIONS AFFORDED BY LENDER UNDER

BANKRUPTCY CODE § 364(e) WITH RESPECT TO FUNDS ADVANCED UNDER THIS INTERIM ORDER, IS INTERIM RELIEF SUBJECT TO ENTRY OF A FINAL ORDER.

54. THIS ORDER IS EFFECTIVE IMMEDIATELY.

55. A FINAL HEARING ON THE FINANCING MOTION WILL BE HELD ON FEBRUARY 11, 2014 AT 1:00 P.M. (EST) ANY OBJECTIONS TO THE FINANCING MOTION OR ENTRY OF THE FINAL ORDER MUST BE FILED WITH THIS COURT AND SERVED ON: (I) COUNSEL TO THE DEBTOR; (II) COUNSEL TO THE LENDER; (III) ALL PARTIES HAVING ENTERED AN APPEARANCE OF RECORD AND REQUESTED NOTICE; AND (IV) THE UNITED STATES TRUSTEE, ON OR BEFORE FEBRUARY 5, 2014 AT 5:00 P.M. (EST)

###