## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

```
----------------------------------------------- x
In re:                                          :    Chapter 11
                                                :
FREEDOM INDUSTRIES, INC.,                        :    Case No. 14- 20017
                                                :    Related to Docket No. 3
                          Debtor.               :
                                                :    The Honorable Ronald G. Pearson
----------------------------------------------- x
```

CORRECTIVE
### ~~SECOND CORRECTED~~ INTERIM AGREED ORDER AUTHORIZING
### DEBTOR-IN-POSSESSION FINANCING

**This matter is before the Court upon** the *Emergency Motion for Interim and Final*

*Order Authorizing Debtor-in-Possession Financing* (the "Financing Motion")[1] [Docket No. 3]

filed by Freedom Industries, Inc. ("Debtor" or "Borrower"), as debtor and debtor-in-possession

seeking, *inter alia*, pursuant to Sections 105, 361, 362(a), 364(c)(1), 364(c)(2) and 364(c)(3) of

Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following:

      (i)      authority for the Debtor to obtain post-petition credit from WV Funding LLC

             ("Lender") disbursed in installment advances from time to time, up to an

---

[1] Capitalized terms not specifically defined herein shall have the meaning ascribed to them in the DIP Agreement.

aggregate principal amount outstanding not to exceed $5,000,000 at any time (the "<u>Maximum Commitment Amount</u>"), and including, without limitation, principal, interest, fees, expenses, and other costs of Lender in accordance with the terms and conditions set forth herein and in the attached Debtor-in-Possession Term Loan Agreement (the "<u>DIP Agreement</u>")[2] and all related documents (collectively, the "<u>DIP Facility</u>");

(ii)    authority for the Debtor to execute, deliver and perform under the DIP Facility and the Loan Documents on account of the DIP Facility and granting or perfecting liens or security interests by the Debtor in favor of Lender on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the documents currently executed or to be executed in connection therewith or related thereto.

(iii)    approval of the terms and conditions of the DIP Facility and the Loan Documents as so executed and delivered;

(iv)    modification of the automatic stay of Bankruptcy Code § 362 (the "<u>Automatic Stay</u>") to the extent provided herein;

(v)    granting of liens and super priority administrative claims to Lender as adequate protection to Lender in respect of the DIP Facility.

---

[2] A copy of the DIP Agreement is attached hereto as <u>Exhibit "1"</u>, and incorporated herein as if set forth in its entirety. Any conflict between the DIP Agreement and this Interim Order shall be governed by the terms and conditions of this Interim Order.

1.     The Debtor and Lender have represented to the Court that they have agreed in good faith to the terms and conditions of this *Interim Agreed Order Authorizing Debtor-in-Possession Financing* (this "Interim Order"). This Court, after modifying the requests of the Debtor and the Lender, hereby grants the relief herein pursuant to Bankruptcy Rule 4001(b) to facilitate the Debtor's efforts to reorganize in this Chapter 11 Case. Therefore, consistent with Bankruptcy Code §§ 105, 361, 362 and 364, this Court hereby finds, concludes and orders:

## BINDING AGREEMENT

2.     The agreements and arrangements authorized in this Interim Order have been negotiated at arm's length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The Debtor and Lender have acted in good faith in the negotiation and preparation of this Interim Order and the Loan Documents, have each been represented by independent counsel, and intend to be and are bound by its terms. The terms of this Interim Order reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

## STATEMENT OF JURISDICTION

3.     This Court has jurisdiction over this Chapter 11 Case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## NOTICE

4.     Sufficient and adequate notice of the Financing Motion for purposes of the Interim Order has been given pursuant to Bankruptcy Rules 2002, 4001, and 9006, and as required by Bankruptcy Code §§ 105, 361, 362 and 364. No further notice of, or hearing on, the relief granted in this Interim Order is necessary or required. Further notice of a final hearing on

the Financing Motion and presentment of a Final Order will be provided as set forth below.  The

relief granted hereunder is necessary to avoid immediate and irreparable harm to the Debtor, its

bankruptcy estate and creditors, and is thus approved and may be acted upon immediately

following entry of this Interim Order.

## FACTUAL AND PROCEDURAL BACKGROUND

5.      On January 17, 2014, (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned

Chapter 11 Case.  The Debtor continues in the management and possession of its business and

property as Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6.      On January 21, 2014, the Court conducted an interim evidentiary hearing on the

Financing Motion and pronounced interim approval of the Financing Motion.  Several objections

to the Motion were filed with the Bankruptcy Court, and those objecting parties as well as other

parties in interest were permitted by the Bankruptcy Court to make argument against the Motion

being granted and permitted to cross-examine witnesses presented by the Debtor.

7.      No official committee of unsecured creditors has been appointed in this Chapter

11 Case as of the date of this Interim Order.

## DIP FACILITY

### Need for DIP Facility

8.      Without the use of the DIP Facility, the Debtor will not have the funds necessary

to maintain its assets, pay necessary employees, payroll taxes, charges of vendors, overhead, and

other expenses (including without limitation, those relating to environmental remediation and

maintenance) necessary to maximize the value of the Debtor's assets.  The use of the DIP

Facility is actual and necessary to preserving the Debtor and its bankruptcy estate.  Lender is

willing to provide the DIP Facility to and for the benefit of the Debtor only in accordance with

the terms of the Loan Documents, including this Interim Order.

9.      The Debtor has requested that Lender provide the DIP Facility in order to provide funds to be used for the purposes set forth in the Budget, and such other purposes as required by this Interim Order and to which Lender consents in writing.

10.      Under the present circumstances of the Debtor, it is unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a) and (b), and no source of credit for the Debtor other than the DIP Facility exists at this time. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The extension of credit by Lender as provided under the terms and conditions in the DIP Agreement and this Interim Order is actual and necessary to preserving the Debtor and its bankruptcy estate.

## Authorization to Obtain Credit

11.      The Debtor is hereby authorized on a limited basis to obtain credit only in accordance with the DIP Agreement, the Budget and this Interim Order.

12.      The Debtor is hereby authorized to borrow an amount not to exceed $3,000,000 in principal amount on an interim basis pursuant to the terms of this Interim Order and the terms of the DIP Agreement, solely for the purpose of paying those items on a timing and line-item basis as provided in the Budget or otherwise due under the DIP Facility as and when they come due.

## Super-Priority Administrative Claims

13.      On account of the DIP Facility, pursuant to Bankruptcy Code § 364(c)(1), Lender is hereby granted super-priority administrative claims senior in right to all other administrative claims against the estate, (other than the Carve Out including but not limited to claims arising under Bankruptcy Code §§ 507(b) and 503(b)(1)).

## CONDITIONS TO LENDING

14.    In consideration of the financing provided for herein and in the DIP Agreement, the Debtor shall use advances under the DIP Facility only to (i), reimburse Lender costs and expenses as provided herein; and (ii) make payments in accordance with the Budget attached hereto as Exhibit "2", with allowable Budget overage variances of up to 15% of the sum of total disbursements on a cumulative basis from the date of entry of this Interim Order to the particular week, beginning in week 3 of the forecast period (the "Budget"). For purposes of clarity only variances relating to expenditures will be measured under the Budget.

15.    Lender's agreement to extend credit extends only to (i) amounts due under the DIP Facility, and (ii) budgeted amounts on a line item basis actually expended in accordance with the Budget. Upon the occurrence of an Event of Default or the Maturity Date, Lender's agreement to extend credit to satisfy projected, budgeted expenditures, shall be immediately terminated and deemed withdrawn.

16.    The Budget may be modified in writing only with the prior written consent of the Lender, in its sole and absolute discretion, provided further, that notice of such modification to the Budget is filed of record with the Bankruptcy Court.

## Automatic Perfection

17.    This Interim Order and the Loan Documents shall be sufficient and conclusive evidence of the priority, and validity of Lender's super-priority claim.

## Authorization to Act

18.    The Debtor is hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as Lender may reasonably require or that may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Interim Order and the DIP Facility.

19.     Until the DIP Facility is indefeasibly paid and satisfied in full by its terms, and without further order of the Court: (a) the Debtor shall use the DIP Facility proceeds strictly in accordance with the terms of the Budget requirements and other terms of this Interim Order; (b) the Debtor shall not, without prior written approval from the Bankruptcy Court, engage in any transaction that is not in the ordinary course of the Debtor's business, and (c) the Debtor shall timely comply with all of the covenants set forth in the Loan Documents.  Funds advanced under the DIP Facility may not be transferred, loaned, or contributed to, or otherwise used or expended on behalf of any affiliates of the Debtor other than as contemplated by the Budget.

## No Additional Liens

20.     Until the DIP Facility is fully satisfied by its terms or the Debtor is converted to a case under Chapter 7 and the Chapter 7 Trustee requires funding for remediation of the Debtor's plant site or to respond to the orders of public officials pertaining to public health under the police power, the Debtor shall not be authorized to obtain credit secured by a lien or security interest in assets of the Debtor absent prior written consent of Lender.  Once the DIP Facility has been fully satisfied by its terms, the Debtor may be authorized to obtain credit secured by a lien or security interest in assets of the Debtor only Court order entered after notice and hearing.

## No Liability

21.     From and after the Petition Date, to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court, no act committed or action taken by Lender, its agents, officers, directors, members, affiliates or lawyers under this Interim Order or the DIP Facility shall be used, construed, or deemed to hold Lender to be in "control" of or participating in the governance, management, or operations of the Debtor for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the

governance, management, or operation of the Debtor or its business (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Lender under the Loan Documents or this Interim Order including, without limitation, such rights and remedies as may be exercisable by Lender in connection with this Interim Order, EXCEPT that this Paragraph shall apply to environmental liabilities only so long as the actions of the Lender, its agents, officers, directors, members, affiliates or lawyers do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtor, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.  For purposes of clarity, the act of lending hereunder shall not be deemed as placing the Lender in control of the Debtor.

### Automatic Stay

22.    The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtor and Lender to commit all acts and take all actions necessary to implement the DIP Facility and this Interim Order, and (b) all acts, actions, and transfers contemplated herein, including, without limitation, indefeasible transfers of funds to Lender by the Debtor, if any, and the application by Lender of same as provided herein.

### Collateral Insurance, Maintenance, Taxes, and Deposits

23.    In accordance with the Budget, the Debtor shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Debtor's assets.

24.     Upon receipt of notification (written or oral) that an insurance policy issued prior to the Petition Date covering any of the Debtor's assets will not be renewed by the respective carrier, the Debtor will immediately notify Lender in writing of such occurrence, and thereafter provide Lender with the status of all negotiations, if any, regarding such policy on a weekly basis.

25.     The Debtor shall make any and all payments reasonably necessary to keep the Debtor's assets in good repair and condition and not permit or commit any waste thereof. The Debtor shall exercise its business judgment and, in so doing shall preserve, maintain, and continue all patents, licenses, privileges, franchises, certificates and the like reasonably necessary for the operation of its business.

26.     The Debtor verifies to the best of its knowledge and belief that all payments to all taxing authorities with respect to the DIP Collateral are current at the present time, except as otherwise disclosed to Lender in writing by the Debtor.

### Fees, Costs and Expenses of Lender

27.     During the Chapter 11 Case, all reasonable fees, costs, and expenses, including attorneys' fees and expenses, that are incurred by Lender (prior to or following the Petition Date) as a result of the Debtor's Chapter 11 Case in connection with the DIP Facility, including but not limited to fees and costs associated with documenting, enforcing and collecting on the DIP Facility ("Lender Costs"), shall be paid by the Debtor out of the DIP Facility advances, on a monthly basis. In order to facilitate tracking of Lender's Costs by the Debtor, counsel for the Lender will provide from time to time (but not less than once each month with respect to the prior month) the amount of its fees and expenses so paid under this paragraph to (i) counsel for the Debtor, and the (ii) United States Trustee.

28.     Such payment shall not constitute satisfaction of any fees of such professionals other than those actually paid.  Any reasonable fees and expenses of Lender that are paid pursuant to the foregoing Lender's Cost procedure shall be deemed allowed without further Order of this Court, unless the Debtor or United States Trustee objects to such Lender Costs based on reasonableness within twenty (20) days of the payment of same.

### Surcharge Protection

29.     No costs or expenses of administration or other costs or expenses of the Debtor or its bankruptcy estate that have been or may be incurred in the Chapter 11 Case, or other proceedings or matters related hereto, shall be charged against Lender pursuant to Bankruptcy Code §§ 506(c), 552 or otherwise (the "Surcharge Protection").  No obligations incurred or payments or other transfers made by or on behalf of the Debtor pursuant hereto or on account of the DIP Facility shall be avoidable or recoverable from Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

### Carve Out

30.     For purpose of this Interim Order, the "Carve Out" means (i) regardless of default the unpaid fees and interest due and payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) all reasonable fees and expenses incurred by Debtor prior to an Event of Default; and (iii) after the occurrence of an Event of Default as defined in this Interim Order, the payment of allowed and unpaid professional fees and disbursements incurred after the occurrence of such Event of Default by the Debtor in an amount not to exceed $300,000 (other than any such fees and disbursements incurred in connection with the initiation or  prosecution of any claims, causes of action, adversary proceedings or other litigation against Lender, *provided* (a) the dollar limitation in this clause on

fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid before the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the Lender or their respective attorneys and agents, and (b) the nothing herein shall be construed to prejudice any objection to any of the fees, expenses, reimbursement or compensation described above. The final terms and conditions of the "carve out" will be clarified by the terms of the Final Order.

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

31.    The occurrence of any of the following shall constitute an Event of Default under this Interim Order: (a) any default, violation, or breach of any of the terms of this Interim Order or the Loan Documents by the Debtor upon five (5) days written notice from Lender to the Debtor and the United States Trustee; (b) the occurrence of the Maturity Date, termination, expiration, or non-renewal of this Interim Order or the DIP Facility as provided for herein or in the Loan Documents; (c) the non-payment by the Debtor of principal, interest, or any fee or other amount due under the DIP Agreement after such amount becomes due and payable; (d) the Debtor shall breach or violate any covenant or agreement contained in the Loan Documents; (e) the conversion of the Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (f) the dismissal of the Debtor's Chapter 11 Case; (g) the entry of any order reversing, revoking, staying, rescinding, or vacating this Interim Order without the express prior written consent of Lender; (h) any security interest, lien, claim, or encumbrance other than liens existing as of the Petition Date, shall be granted in any of the Debtor's assets; (i) the Debtor shall attempt to vacate or modify this Interim Order over the objection of Lender; (j) any challenge by the Debtor to the extent, validity, priority, or unavoidability of Lender's claim relating to the DIP

Facility; (k) any provision of the Loan Documents shall cease to be valid and binding on the Debtor, or the Debtor shall so assert in any pleading filed with any court; (l) a break in the Debtor's exclusive period to file a plan of reorganization of liquidation as provided in Bankruptcy Code § 1121(b) and (p) any other Event of Default under the Loan Documents (any of the foregoing events of default, being referred to in this Interim Order, individually, as an "Event of Default", or severally, as "Events of Default").

### Remedies

32.     Upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender, with such notice likewise being filed of record with the Bankruptcy Court; (a) Lender may declare all or any part of the DIP Facility immediately to be accelerated and due and payable for all purposes, rights, and remedies, (b) Lender's obligations in connection with the DIP Facility shall immediately terminate, and (c) with the exception of funding the Carve Out, any and all obligations of Lender under this Interim Order shall terminate. Notwithstanding anything to the contrary contained herein, Lender shall have no obligation to make any advances under the DIP Facility unless all terms and conditions of the DIP Agreement are satisfied at the time of such advance, including, but not limited to, those conditions precedent contained in the DIP Agreement.

33.     Furthermore, (i) upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender, with such notice likewise being filed of record with the Bankruptcy Court, and (ii) upon entry of an order granting Lender relief from the Automatic Stay (if and to the extent necessary), then Lender shall be entitled to pursue all rights and remedies in

accordance with applicable law in connection with the DIP Facility, provided that Lender may not take any action that would result in a lien on assets of the Borrower securing the Loan. Upon the occurrence of any Event of Default, Lender shall be entitled to seek, on an expedited basis, relief from the Automatic Stay.

34.    Upon the occurrence of any Event of Default that remains uncured by the Debtor within five (5) days after the Debtor's receipt of written notice of such Event of Default from Lender and such notice having been filed of record with the Bankruptcy Court, Lender shall not be obligated to, but may, in its sole and absolute discretion, continue advance funds to the Debtor, and all such advance(s) (i) shall not constitute a waiver, limitation, or modification of Lender's rights and remedies pursuant to the Loan Documents and under applicable law, and (ii) shall be and hereby are granted all of the protections granted to Lender under this Interim Order in connection with the DIP Facility.

**OTHER TERMS**

35.    Until the DIP Facility is fully satisfied by its terms, the Debtor shall not file or support any motion, application or other pleading which seeks to obtain approval of any claims or liens that are or will be prior to or on a parity with the super-priority claims of Lender against the Debtor and its bankruptcy estate arising out of the Loan Documents and this Interim Order absent prior written consent of Lender. Further, no priority claims shall be allowed that are or will be prior to or on a parity with the super-priority claims or secured claims of Lender against the Debtor and its estate arising out of the Loan Documents and this Interim Order absent prior written consent of Lender or Court order entered after notice and hearing

36.    Except as contemplated by the Budget and in the ordinary course of business, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any of its assets, without the prior written consent of Lender.

37.    All post-petition advances under the DIP Agreement are made in reliance on this Interim Order, and so long as such advances remain unpaid, the Debtor shall not file or support any motion, application or other pleading, except as shall cause or permit payment of such advances in full or be consented to in writing by Lender (a) which seeks to authorize the sale, lease, or other disposition of substantially all of the Debtor's assets, (b) which seeks to authorize the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in the Debtor's assets unless Lender's super-priority claim granted hereunder is paid in full and satisfied, or (c) which seeks to grant any claim a priority administrative claim status that is equal or superior to the super-priority status granted to Lender herein.    Further, so long as such advances remain unpaid, the Debtor may not file or support any motion, application or other pleading that is inconsistent with this Interim Order or the Loan Documents.

38.    The terms hereunder and under the Loan Documents, and the rights of Lender pursuant to this Interim Order with respect to the DIP Facility shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor absent prior written consent of Lender.

39.    The terms and provisions of this Interim Order and any actions taken pursuant hereto, shall survive entry of any order that may be entered converting to Chapter 7 or dismissing the Chapter 11 Case.  The terms and provisions of this Interim Order, as well as the priorities in payment, granted pursuant to the Loan Documents and this Interim Order, shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, shall maintain their priority as provided by this Interim Order until the DIP Facility is indefeasibly paid and satisfied in full by its terms and discharged and Lender shall have no further obligation or financial accommodation to the Debtor, provided that the super-priority

claim of Lender granted herein, shall not have priority over any Chapter 7 administrative expenses to the extent approved by this Court.

40.    The provisions of this Interim Order shall inure to the benefit of the Debtor and Lender , and they shall be binding upon (a) the Debtor and its respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtor or with respect to property of the bankruptcy estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code, any confirmed plan of reorganization or liquidation, or any subsequent Chapter 7 case, and (b) all creditors of the Debtor and other parties in interest.

41.    If any or all of the provisions of this Interim Order are hereafter modified, vacated, terminated, expired or stayed, such modification, vacation, termination, expiration or stay shall not affect (a) the validity of any obligations incurred by the Debtor to Lender before the effective date of such modification, vacation, termination, expiration or stay or (b) the validity or enforceability of any priority or other protection authorized, created, or confirmed hereby or pursuant to the Loan Documents.  Notwithstanding any such modification, vacation, termination, expiration or stay, any obligations incurred by the Debtor to Lender before the effective date of such modification, vacation, termination, expiration or stay shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and pursuant to the Loan Documents with respect to all such obligations.

42.    To the extent the terms and conditions of the DIP Agreement are in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

{P0156662.1}

43.     No approval, agreement, or consent requested of Lender by the Debtor pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of Lender other than a writing acceptable to Lender that is signed by Lender and expressly shows such approval, agreement or consent.

44.     Nothing herein shall be deemed or construed to waive, limit, vacate, terminate or modify the rights of Lender to seek other relief in the Chapter 11 Case in accordance with any provision of the Bankruptcy Code or applicable law.

45.     Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify, vacate, terminate, or prejudice the claims, rights, protections, privileges and defenses of Lender afforded pursuant to Title 11 of the United States Code including, without limitation, those claims, rights, protections, privileges and defenses afforded Lender pursuant to the Bankruptcy Code.

46.     This Interim Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by Lender and the Debtor without the necessity of entry into the docket sheet of the Chapter 11 Case.  To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

47.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection therewith.

48.     All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms herein.

## NOTICE

49.    The Debtor's counsel shall serve this Interim Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for Lender; (c) all creditors known to the Debtor who have or may assert liens against the Debtor's assets; (d) the United States Internal Revenue Service; (e) the holders of the twenty (20) largest liquidated general unsecured claims and (f) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Southern District of West Virginia.

50.    Any notice, objection, report, or other document required to be given hereunder shall be deemed given upon its filing with the clerk of the Bankruptcy Court and its deposit in the United States mail, postage pre-paid, and addressed as follows:

If to Lender:

WV Funding LLC
c/o Phillips, Gardill, Kaiser & Altmeyer, PLLC
61 Fourteenth Street
Wheeling, WV 26003
ATTN: Denise Knouse-Snyder
Email:  denisesnyder@pgka.com
        Charles J. Kaiser, Jr.
Email:  cjkaiser@pgka.com

if to the Debtor:

Freedom Industries, Inc
c/o Gary Southern
1015 Barlow Drive
Charleston, WV 25311
Email: gsouthern@freedom-industries.com

with a copy to:

Mark E. Freedlander
Michael J. Roeschenthaler
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Email:
mfreedlander@mcguirewoods.com
mroeschenthaler@mcguirewoods.com

## **EXPIRATION DATE/MATURITY**

51.     Lender's commitment to provide credit under the DIP Agreement and this Interim

Order, subject to the funding and Budget limitations above, shall be effective upon entry of this

Interim Order to and including the earlier of: (a) notice of the occurrence of an Event of Default,

or (b) twenty (20) days from the date of entry by the Court of this Interim Order (the "Expiration

Date").

52.     Nothing in this Order or the DIP Agreement or Loan Documents shall relieve the

Debtor of any obligations under federal, state or local police or regulatory laws or under 28

U.S.C. § 959(b).  Nothing in this Order or the DIP Agreement or Loan Documents shall impair

or adversely affect any claim of any governmental unit with respect to any insurance proceeds

for liabilities under environmental laws to the extent not permitted by applicable law.  As to the

United States, any State or municipality and any of the foregoing's respective agencies,

departments or agents, nothing in this Order or the DIP Documents shall discharge, release or

otherwise preclude any valid right of setoff or recoupment that any such entity may have.

Nothing in this Order or the DIP Agreement or Loan Documents impairs or adversely affects any

right of a governmental unit under financial assurance instruments provided by the Debtor to

comply with non-bankruptcy law." Except as provided above, all rights and defenses of the

Debtor and its bankruptcy estate with respect to the foregoing reservations are reserved.

53.     THE FINANCING MOTION, DIP AGREEMENT AND LOAN DOCUMENTS ARE

HEREBY APPROVED AND THE FINANCING MOTION IS GRANTED ON AN INTERIM BASIS

AS SET FORTH HEREIN.  FOR PURPOSES OF CLARITY, ALL RELIEF GRANTED UNDER THIS

INTERIM ORDER, OTHER THAN THE PROTECTIONS AFFORDED BY LENDER UNDER

BANKRUPTCY CODE § 364(e) WITH RESPECT TO FUNDS ADVANCED UNDER THIS INTERIM

ORDER, IS INTERIM RELIEF SUBJECT TO ENTRY OF A FINAL ORDER.

54.     THIS ORDER IS EFFECTIVE IMMEDIATELY.

55.     A FINAL HEARING ON THE FINANCING MOTION WILL BE HELD ON
FEBRUARY 11, 2014 AT 1:00 P.M. (EST)  ANY OBJECTIONS TO THE FINANCING MOTION OR
ENTRY OF THE FINAL ORDER MUST BE FILED WITH THIS COURT AND SERVED ON: (I)
COUNSEL  TO THE DEBTOR; (II) COUNSEL TO THE LENDER; (III) ALL PARTIES HAVING
ENTERED AN APPEARANCE OF RECORD AND REQUESTED NOTICE; AND (IV) THE UNITED
STATES TRUSTEE, ON OR BEFORE FEBRUARY 5, 2014 AT 5:00 P.M. (EST)

### 

ENTER: January 28, 2014

Honorable Ronald G. Pearson
Bankruptcy Judge

**EXHIBIT "1" TO DIP ORDER**

**DIP AGREEMENT**

{P0156662.1}

DEBTOR-IN-POSSESSION CREDIT AGREEMENT

Effective as of JANUARY 27, 2014

among

FREEDOM INDUSTRIES, INC.
Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code, as Borrower,

and

WV FUNDING LLC, as Lender

# TABLE OF CONTENTS

**Page**

ARTICLE I   DEFINITIONS .................................................................................. 1

   1.1   Defined Terms ....................................................................................... 1

   1.2   Other Definitional Provisions ............................................................... 5

   1.3   Payment Terms; References to Money .................................................. 6

ARTICLE II   AMOUNT AND TERMS OF REVOLVING LOANS ................... 6

   2.1   Loan Commitments ............................................................................... 6

   2.2   Note ....................................................................................................... 7

   2.3   Procedure for Installment Loans and Payments ................................... 7

   2.4   Permanent Reduction of Loan Commitment ........................................ 7

   2.5   Interest Rates and Payment Dates ........................................................ 7

   2.6   Computation of Interest ........................................................................ 8

   2.7   Prepayments .......................................................................................... 8

   2.8   Use of Proceeds .................................................................................... 8

   2.9   Priority and Security ............................................................................. 8

   2.10   Payment of Obligations ...................................................................... 9

   2.11   No Discharge, Survival of Claims ..................................................... 9

ARTICLE III   REPRESENTATIONS AND WARRANTIES ............................. 9

   3.1   No Legal Bar ......................................................................................... 9

   3.2   No Default ........................................................................................... 10

   3.3   Purpose of Loans ................................................................................ 10

   3.4   Accuracy and Completeness of Information ....................................... 10

   3.5   The Orders .......................................................................................... 10

   3.6   Liens and Claims of Lender ................................................................ 10

   3.7   Reorganization Matters ....................................................................... 10

ARTICLE IV   CONDITIONS PRECEDENT ..................................................... 11

   4.1   Conditions ........................................................................................... 11

   4.2   Conditions to Draws Upon Entry of the Interim Order ...................... 11

   4.3   Conditions to Additional Draws Upon Entry of the Final Order ....... 12

ARTICLE V   NEGATIVE COVENANTS .......................................................... 13

   5.1   Limitation on Indebtedness ................................................................ 13

## TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| 5.2 | Limitation on Liens or Claims | 13 |
| 5.3 | Limitation on Sale of Assets | 13 |
| 5.4 | Limitations on Employee Inceptives, Bonuses or Other Retention Payments | 13 |
| 5.5 | Limitations on use of Term Loan Proceeds | 13 |
| 5.6 | Disrepair or Impairment of Assets | 14 |
| 5.7 | Failure to Comply with Laws | 14 |
| ARTICLE VI | TERMINATION | 14 |
| 6.1 | Termination | 14 |
| 6.2 | Survival of Obligations Upon Termination of Financing Arrangements | 14 |
| ARTICLE VII | EVENTS OF DEFAULT; RIGHTS AND REMEDIES | 14 |
| 7.1 | Events of Default | 14 |
| 7.2 | Remedies | 16 |
| ARTICLE VIII | MISCELLANEOUS | 17 |
| 8.1 | Amendments and Waivers | 17 |
| 8.2 | No Waiver; Cumulative Remedies | 17 |
| 8.3 | Survival of Representations and Warranties | 17 |
| 8.4 | Successors and Assigns; Participations and Assignments | 17 |
| 8.5 | Counterparts | 17 |
| 8.6 | Severability | 18 |
| 8.7 | Governing Law | 18 |
| 8.8 | Submission to Jurisdiction; Waivers | 18 |
| 8.9 | No Waiver | 18 |

THIS DEBTOR-IN-POSSESSION CREDIT AGREEMENT ("Agreement"), effective as of January 27, 2014, by and between FREEDOM INDUSTRIES, INC. ("Borrower"), debtor and a debtor-in-possession in a case pending under Chapter 11 of Title 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of West Virginia (the "Chapter 11 Case"), and WV FUNDING LLC, a West Virginia Limited Liability Company. ("Lender").

RECITALS

WHEREAS, on January 17, 2014 (the "Petition Date"), the Borrower filed a voluntary petition for relief with the Bankruptcy Court (as defined in Section 1.1) initiating the Chapter 11 Case, and has continued in the possession of its assets and in the management of its business pursuant to Bankruptcy Code Sections 1107 and 1108;

WHEREAS, on January 21 , 2014 the Bankruptcy Court conducted a hearing on approval of the Debtor-In-Possession Financing to be evidenced by a Secured Promissory Note ("Note") and related   Loan Documents ("Loan'), and entered the Interim Agreed Order Authorizing Debtor-In-Possession Financing on January 27, 2014 ("Interim Order") ;

WHEREAS, the Interim Order scheduled a hearing before the Bankruptcy Court on February 11, 2014 for the purpose of approving the Loan on a final basis and entering the Final Order;

WHEREAS, this Agreement is being executed with and in contemplation of entry of the Final Order by the Bankruptcy Court;

WHEREAS, an immediate and on-going need exists for the Borrower to obtain additional funds in order to continue the operation of its business and manage its affairs as debtor-in-possession under Chapter 11 of the Bankruptcy Code and, accordingly, the Borrower has requested that the Lender extend post-petition financing to the Borrower;

WHEREAS, the Lender is willing to make the Loan as defined in Section 1.1 to the Borrower upon the terms and conditions set forth herein;

WHEREAS, all Exhibits hereto, or expressly identified to this Agreement, are incorporated herein by reference, and taken together, shall constitute but a single agreement.

THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, and for other good and valuable consideration, the parties hereto agree as follows:

ARTICLE I
DEFINITIONS

1.1    Defined Terms.

Capitalized terms used in the Loan Documents shall have (unless otherwise provided elsewhere in the Loan Documents) the following respective meanings and all Section references in the following definitions shall refer to Sections of the Agreement.

"Agreement" shall mean this Debtor-in-Possession Credit Agreement, as the same may from time to time be amended, modified or supplemented.

"Asset Sale" shall mean any disposition of Collateral or series of related dispositions of Collateral.

"Bankruptcy Code" shall mean 11 U.S.C. §§ 101, et seq. as amended.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of West Virginia.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Procedure for the Southern District of West Virginia, as either of the same may from time to time be in effect and applicable to the Chapter 11 Case.

"Borrower" shall mean and refer to FREEDOM INDUSTRIES, INC., the debtor and a debtor-in-possession.

"Budget" shall mean the 13-week cash flow forecast prepared by Borrower on a cash basis, and updated demonstrating actual income and expenses compared against Budget on a bi-weekly basis, all in form and substance satisfactory to the Lender. A copy of the Budget shall be attached to the Interim Order.

"Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in West Virginia are authorized or required by law to close.

"Change of Control" shall mean the occurrence of any of the following:

(a)     the acquisition directly or indirectly by any Person (other than the Lender) or two or more Persons acting in concert of (i) beneficial ownership (within the meaning of Rule 13d-3 of the Securities and Exchange Commission under the Securities Exchange Act of 1934) of thirty-five percent (35%) of the outstanding Voting Securities of the Parent or (ii) the power (whether or not exercised) to elect a majority of the Parent's directors;

(b)     A Trustee or Examiner with expanded powers is appointed in Borrower's Chapter 11 Case; or

(c)     Borrower's Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code, or dismissed.

"Chapter 11 Case" shall have the meaning ascribed thereto in the Preamble.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated and rulings issued thereunder.

"Commitment Termination Date" shall mean the earliest of (a) the Maturity Date; (b) the date of substantial consummation (as defined in Section 1101 of the Bankruptcy Code of a

Reorganization Plan that is confirmed pursuant to an order of the Bankruptcy Court; and (c) the acceleration of the Loan and the termination of the Loan Commitments in accordance with the terms hereof, including Section 7.2.

"Default" shall mean any of the events specified in Section 7.1, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Draw Request" shall mean written requests for draws of the Loan by Borrower which requests (i) shall not exceed one per every seven (7) day period; (ii) shall be no less than $50,000 per draw; (iii) shall not in the aggregate exceed $3,000,000 until such time as the Bankruptcy Court has entered the Final Order; (iv) shall not in the aggregate exceed the Maximum Commitment Amount; and (v) shall be for purposes and in amounts as contemplated by the Budget or the Loan Documents.

"Event of Default" shall have the meaning ascribed thereto in Section 7.1.

"Final Order" means the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Court which order shall be satisfactory in form and substance to Lender, and from which no appeal or motion to reconsider has been timely filed, or if timely field, such appeal or motion to reconsider has been dismissed or denied (unless Lender waives such requirement), together with all extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes the Borrower to obtain credit, incur indebtedness, and authorizes and approves in their entirety the Loan, Budget and Loan Documents.

"Fiscal Year" shall mean any of the annual accounting periods of the Borrower ending on June 30 of each year.

"Interest Payment Date" means the first Business Day of each month.

"Interim Closing Date" shall mean the date of funding by Lender of the First Draw Request, which date was January 27, 2014.

"Interim Order" shall mean the interim order of the Bankruptcy Court entered in the Chapter 11 Case on January 27, 2014, after notice and hearing in accordance with Bankruptcy Rule 4001(c)(1)(C)(3), and which authorized and approved the Loan, Budget, Loan Documents.

"IRS" shall mean the Internal Revenue Service, or any successor thereto.

"Lender" shall have the meaning ascribed thereto in the preamble.

"Lien" shall mean any mortgage, deed of trust, pledge, statutory deemed trust, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale

or other title retention agreement and any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than the filing of any such financing statement which states therein that such filing is a precautionary filing only and is filed in connection with "true leases" only) or comparable law of any jurisdiction), (b) any arrangement or agreement which prohibits any loan party from creating any mortgage, pledge, hypothecation, deposit arrangement, encumbrance, lien, charge or other security interest, or from entering into any agreement or arrangement described in clause (a) of this definition or (c) the sale, assignment, pledge or transfer for security of any accounts, general intangibles or chattel paper of any loan party with or without recourse.

"Loans" shall mean the Loan as funded by Lender in installments from time to time pursuant to written Draw Requests by Borrower.

"Loan" shall have the meaning ascribed thereto in Section 2.1, as such Loan may be increased by interest and fees to outside Persons incurred by Lender and relating to the Loan capitalized and added to the principal balance thereto pursuant to the terms of this Agreement.

"Loan Commitment" means Lender's commitment to make the Loan in installments to the Borrower as set forth herein.

"Loan Documents" shall mean the Agreement, the Note, the Interim Order and all other agreements, instruments, documents and certificates executed and delivered to, or in favor of, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of Borrower in connection with the Agreement or the transactions contemplated hereby. Any reference in the Agreement or any other Loan Document to a Loan Document shall include all exhibits thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to such Agreement as the same may be in effect at any and all times such reference becomes operative.

"Material Adverse Effect" shall mean a material adverse effect on (a) the business, operations, property, or condition (financial or otherwise) of the Borrower, (b) the ability of Borrower to fully and timely perform its Obligations or (c) the validity, priority or enforceability of this Agreement, the Note or any of the other Loan Documents, or the rights or remedies of the Lender hereunder or thereunder.

"Maturity Date" shall mean the earlier to occur of (a) one hundred eighty (180) from the date that Borrower files its Bankruptcy Case (the "Petition Date"), or the Commitment Termination Date as defined herein.

"Maximum Commitment Amount" shall mean Four Million ($4,000,000) Dollars.

"Note" shall mean the Secured Promissory Note dated January 27, 2014 in the principal amount of Four Million Dollars ($4,000,000.00).

"Obligations" shall mean the unpaid principal of and interest on (including without limitation, interest accruing after the maturity of the Loan) the Note and under this Agreement, or any other document made, delivered or given in connection therewith or herewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, or expenses.

"Person" shall mean an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Petition Date" shall have the meaning ascribed thereto in the Recitals.

"Permitted Lien" shall mean a Lien existing as of the Petition Date to which Lender consents will prime Lender in lien priority with respect to the DIP Collateral to which each respective holder's lien relates. The following shall be Permitted Liens: (i) UCC Financing Statement filed by PPG Industries on August 3, 2011 at No. 201138463140; (ii) Federal Tax Lien filed in Kanawha County, WV on August 2, 2010 in the amount of $320,199.24; and (iii) Federal Tax Lien filed in Kanawha County, WV in the amount of $2,075,623.71.

"Post-petition Financing Orders" shall collectively mean the Interim Order and the Final Order authorizing and approving this Agreement, the Loan Documents and the transactions contemplated thereunder.

"Promissory Note" shall have the meaning ascribed thereto in Section 2.2.

"Reorganization Plan" shall mean (i) a plan of reorganization filed by the Borrower and consented to by Lender; or (ii) a plan of reorganization or liquidation filed by Lender in the Chapter 11 Case.

"Requirement of Law" as to any Person shall mean the certificate of incorporation and bylaws or other organization or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

1.2    Other Definitional Provisions.

(a)    Unless otherwise specified therein, all terms defined in this Agreement shall have their respective defined meanings when used in the Note or other Loan Documents.

(b)    As used herein, in the Note or other Loan Documents made or delivered pursuant hereto, accounting terms relating to either Borrower and accounting terms partly defined in Section 1.1, to the extent not defined, shall have the respective meanings given to them under normal and customary use.

(c)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole, including all Exhibits, as the same may from time to time be amended, restated, modified or supplemented, and not to any particular section, subsection or clause contained in the Agreement or any such Exhibit. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(d)    Unless the context otherwise requires, each reference herein to any agreement, document or instrument (including the Loan Documents) shall be deemed a reference to such

agreement, document or instrument as amended, restated, supplemented or otherwise modified from time to time.

(e)     The term "includes" and "including" shall not be construed to imply any limitation.

(f)     In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding". Periods of days referred to in this Agreement shall be counted in calendar days unless Business days are expressly prescribed. Any period determined hereunder by reference to a month or months or year or years shall end on the day in the relevant calendar month in the relevant year, if applicable, immediately preceding the date numerically corresponding to the first day of such period, provided that if such period commences on the last day of a calendar moth (or on a day for which there is no numerically corresponding day in the calendar month during which such period is to end), such period shall, unless otherwise expressly required by the other provisions of this Agreement, end on the last day of the calendar month.

1.3     <u>Payment Terms; References to Money</u>.

Except as expressly set forth herein to the contrary, (a) all payments made by the Borrower shall be made in Dollars in respect of principal and interest on the Loan, and (b) to the extent not otherwise indicated, all amounts of money referenced herein shall mean and be references to amounts of money denominated in Dollars.

ARTICLE II
AMOUNT AND TERMS OF REVOLVING LOANS

2.1     <u>Loan Commitments</u>.

Subject to the terms and conditions hereof (including without limitation the conditions precedent set forth in <u>ARTICLE IV</u> hereof), Lender agrees to make the Loan funded in multiple draws pursuant to Draw Requests to Borrower from time to time until the Commitment Termination Date in an aggregate principal amount at any one time outstanding not to exceed the Maximum Commitment Amount; provided that Lender shall not fund any Draw Request under the Loan if:

(a)     After giving effect thereto, the sum of the outstanding aggregate principal amount of the Loan would exceed the Maximum Commitment Amount; or

(b)     An Event of Default has occurred in this Agreement and is not cured during the applicable period for cure, if any.

2.2     <u>Promissory Note</u>.

The Loan made by Lender is evidenced by a promissory note of the Borrower made to the order of Lender effective as of January 27, 2014 (the "<u>Note</u>"), with appropriate insertions as

to date and principal amount, payable to the order of Lender and in a principal amount equal to the Maximum Commitment Amount.

2.3     Procedure for Installment Loans and Payments.

(a)     The Borrower may borrow under the Loan Commitment until the Commitment Termination Date on any Business Day pursuant to a Draw Request.  Lender will make the amount of the draw on the Loan available to the account of the Borrower within two Business Days (i.e., twenty-four (24) hours following Lender's receipt of a Draw Request).

(b)     The Loan (including all interest, costs and fees capitalized and added to the principal balance of the Loan) shall be paid in full on the Commitment Termination Date, pursuant to the terms herein.  Lender's obligation to make the Loan shall terminate at the close of business on the Business Day immediately preceding the Maturity Date, unless sooner terminated in accordance with the terms hereof.

2.4     Permanent Reduction of Loan Commitment.

The Borrower shall have the right, upon not less than five (5) Business Days' notice, to terminate the Loan Commitment or, from time to time, to reduce permanently the amount of the Loan Commitment in whole, but not in part.  Such reduction of the Loan Commitment shall be accompanied by payment in full of all outstanding principal and accrued interest thereon, to and including the date of such prepayment, together with any additional amounts owing and any outstanding fees and expenses due and owing.

2.5     Interest Rates and Payment Dates.

(a)     The Loan (and all amounts capitalized and added to the principal balance of the Loan) shall bear interest at a rate equal to the  JP Morgan Prime Rate in effect on the Interim Closing Date, plus two (2%) percent per annum.

(b)     Interest accruing shall be payable on the Interest Payment Date or from time to time on demand.

2.6     Computation of Interest.

(a)     Interest shall be calculated for the actual number of days elapsed on the basis of a hypothetical year of 360 days.

(b)     Each determination of an interest rate pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower and the Lender in the absence of manifest error.

2.7     Use of Proceeds.

Other than the reimbursement to Lender of all fees and expenses associated with the Loan or enforcement or collection thereof, the Borrower shall utilize the proceeds of the Loan solely to pay pre-petition and (as may be authorized by order of the Bankruptcy Court) post-petition expenses in accordance with the Budget.  Borrower shall not be permitted to use the proceeds of

the Loans: (i) to finance in any way, any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of Lender or its rights and remedies under this Agreement, the other Loan Documents, the Final Order; (ii) to finance the payment of, or application for authority to pay, any prepetition claim without the Lender's prior written consent and an order of the Bankruptcy Court; (iii) to make any distribution under a Reorganization Plan in the Chapter 11 Case; or (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Lender.

2.8    Priority.

Borrower hereby covenants, represents and warrants that, upon entry of the Interim Order, the Obligations of the Borrower hereunder and under the Loan Documents: pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed administrative expense claims in the Chapter 11 Case having priority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.

2.9    Payment of Obligations.

Upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

2.10    No Discharge, Survival of Claims.

Borrower agrees that to the extent the Obligations hereunder are not satisfied in full, (i) its Obligations arising hereunder shall not be discharged by the entry of an order confirming a plan of reorganization or plan of liquidation (and the Borrower pursuant to Section 1141(d)(4) of the Bankruptcy Code hereby waives any such discharge); and (ii) the claims granted to Lender pursuant to the Final Order shall not be affected in any manner by the entry of an order confirming any such plan of reorganization or plan of liquidation in the Chapter 11 Case.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

To induce Lender to make the Loans, the Borrower makes the following representations and warranties to Lender with respect to Borrower, each and all of which shall survive the execution and delivery of this Agreement.

3.1    No Legal Bar.

Except for the effect of the filing of the Chapter 11 Case, the execution, delivery and performance of the Loan Documents to which Borrower is a party, the borrowings by Borrower hereunder and the use of the proceeds thereof (a) will not violate any Requirement of Law or Contractual Obligation of Borrower, (b) will not accelerate or result in the acceleration of any payment obligations of Borrower, and (c) will not result in, or require, the creation or imposition

of any Lien on any of the respective properties or revenues of any Borrower pursuant to any such Requirement of Law or Contractual Obligation.

3.2     No Default.

Borrower is not in default under, or with respect to, any of its Contractual Obligations in any respect which could reasonably be expected to have a Material Adverse Effect. Immediately after giving effect to this Agreement, no Default or Event of Default has occurred and is continuing.

3.3     Purpose of Loans.

The Borrower shall not use the proceeds of the Loan hereunder other than in accordance with this Agreement, the Budget, The Interim Order, the Final Order, or any other Loan Document.

3.4     Accuracy and Completeness of Information.

All information, reports and other papers and data with respect to the Borrower furnished to the Lender by or on behalf of Borrower, were, at the time furnished, complete and correct in all material respects, or have been subsequently supplemented by other information, reports or other papers or data, to the extent necessary to give the Lender a true and accurate knowledge of the subject matter in all material respects. There is no fact known to Borrower that has, or could reasonably be expected to have, a Material Adverse Effect.

3.5     The Orders.

On the date of the making of any Draw Request under the Loan, the Final Order shall have been entered and shall not have been amended, stayed, vacated or rescinded without the Lender's consent. Upon the maturity (whether by the acceleration or otherwise), the Obligations of the Borrower hereunder and under the other Loan Documents shall be entitled to immediate payment of such Obligations. Lender shall have the right to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

3.6     Liens and Claims of Lender.

Upon the entry of the Interim Order and then the Final Order, the claims of the Lender shall be deemed allowed.

3.7     Reorganization Matters.

(a)     The Chapter 11 Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof and the proper notice for the hearing for the approval of the Interim Order and Final Order has been given.

(b)     After the entry of the Interim Order, and pursuant to and to the extent permitted in the Final Order, the Obligations will constitute allowed super-priority administrative expense

claims in the Chapter 11 Case having priority over all other administrative priority claims against Borrower now existing or hereafter arising, of any kind whatsoever.

(c)    The Final Order (with respect to the period on and after entry of the Final Order) is in full force and effect has not been reversed, stayed, modified or amended.

(d)    Subject to five (5) days prior written notice, notwithstanding the provisions of section 362 of the Bankruptcy Code, upon the maturity (whether by acceleration or otherwise) of any of the Obligations, Lender shall be entitled to immediate payment of such Obligations and to enforce the remedies provided for hereunder, subject to order of the Bankruptcy Court.

ARTICLE IV
CONDITIONS PRECEDENT

4.1    Conditions.

[RESERVED]

4.2    Conditions to Draws Upon Entry of the Interim Order.

The obligation of the Lender to fund Draw Requests under the Loan as authorized in accordance with the Interim Order in an amount not to exceed $3,000,000 or to take, fulfill or perform any other action hereunder, until the following conditions have been satisfied or provided for in a manner satisfactory to the Lender, or waived in writing by the Lender.

(a)    Loan Documents.  The Lender shall receive this Agreement, the Note and all other Loan Documents, each other agreement, documents and instruments relating to the loan and other credit transactions contemplated by this Agreement, each duly executed where appropriate and in form and substance satisfactory to the Lender.  Borrower shall also submit the Budget and all other information requested by the Lender.

(b)    No Material Adverse Effect.  No Material Adverse Effect shall have occurred after the Petition Date with respect to Borrower, other than those which customarily occur as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Chapter 11 Case.

(c)    Interim Order.  No later January 27, 2014, Lender shall have received a copy of the Interim Order, inter alia, approving the transactions contemplated hereby and finding that the Lender is extending credit to the Borrower in good faith within the meaning of Section 364(e) of the Bankruptcy Code.  Such Interim Order (i) shall be in form and substance satisfactory to Lender; (ii) shall have been entered upon an application of the Borrower reasonably satisfactory in form and substance to the Lender; (iii) shall be in full force and effect; and (iv) shall not has been stayed, reversed, vacated or rescinded or, without the consent of the Lender, modified or amended in any respect and, if the Interim Order is the subject of a pending appeal in any respect, neither the making of such loan nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

(d)    The Interim Order authorizes and approves the right and obligation of the Borrower to reimburse Lender for all out-of-pocket fees, costs and expenses (including legal fees and expenses) and other compensation contemplated hereunder.

4.3   Conditions to Additional Draws Upon Entry of the Final Order.

The obligation of the Lender to fund Draw Requests under the Loan as authorized in accordance with the Final Order in an amount not to exceed the Maximum Commitment Amount or to take, fulfill or perform any other action hereunder, until the following conditions have been satisfied or provided for in a manner satisfactory to the Lender, or waived in writing by the Lender.

(a)    No Material Adverse Effect.  No Material Adverse Effect shall have occurred with respect to Borrower after the Petition Date, other than those which customarily occur as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Chapter 11 Case.

(b)    Final Order.  In no later than twenty (20) days after entry by the Bankruptcy Court of the Interim Order, Lender shall have received a copy of the Final Order, *inter alia,* approving the transactions contemplated hereby and finding that the Lender is extending credit to the Borrower in good faith within the meaning of section 364(e) of the Bankruptcy Code.  Such Final Order (i) shall be in form and substance satisfactory to Lender; (ii) shall have been entered upon an application of the Borrower reasonably satisfactory in form and substance to the Lender; (iii) shall be in full force and effect; and (iv) shall not have been stayed, reversed, vacated or rescinded or, without the consent of the Lender, modified or amended in any respect and, if the Final Order is the subject of a pending appeal in any respect, neither the making of such Loans nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

(c)    The Final Order authorizes and approves the right and obligation of the Borrower to reimburse Lender for all out-of-pocket fees, costs and expenses (including legal fees and expenses) and other compensation contemplated hereunder in connection with, enforcement of and collection of the Loan in a manner acceptable in form and substance to Lender.

(d)    Borrower shall have remained in compliance with the Budget.

ARTICLE V
NEGATIVE COVENANTS

From the date hereof and for so long as the Loan Commitment remains in effect, the Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower hereby agrees that it will not, (and will not apply, unless in connection with an amendment to the Agreement that has been approved in writing by the Lender.

5.1   <u>Limitation on Indebtedness</u>.

Except as authorized in the Interim Order, create, incur, assume or permit to exist any Indebtedness, or enter into any agreement or binding commitment to create, incur, assume or suffer to exist any Indebtedness, except the Loan and the Obligations created under this Agreement.

5.2   <u>Limitation on Liens or Claims</u>.

Except as authorized in the Interim Order, create, incur, assume or permit to exist (other than liens existing on the Petition Date) any Lien on or with respect to any of its properties, assets or revenues (whether now owned or hereafter acquired), or incur claims that have priority *pari passu* with or senior to the claims granted to Lender hereunder.

5.3   <u>Limitation on Sale of Assets</u>.

Convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets (including, without limitation, any capital stock, receivables and fee or leasehold interests), outside the ordinary course of business, whether now owned or hereafter acquired, in each case, in one transaction or a series of transactions to any Person, except as otherwise approved in writing by the Lender prior to the consummation thereof.

5.4   <u>Limitations on Employee Incentives, Bonuses or Other Retention Payments</u>.

Grant, pay or seek Bankruptcy Court approval of any employee incentive program or payments, bonus or retention plans or payments without the prior written consent of the Lender.

5.5   <u>Limitations on Use of Loan Proceeds</u>.

Pay or incur obligations other than in the ordinary course of business or as otherwise provided for and delineated in the Budget without prior written consent of the Lender.

5.6   <u>Disrepair or Impairment of Assets</u>.

Allow any property or casualty insurance to lapse or expire, allow any utility service to be terminated, fail to maintain and repair any assets of the Borrower or incur any tax obligations without timely payment.

5.7   <u>Failure to Comply with Laws</u>.

Fail to comply with any law, regulation or requirement applicable to the Borrower.

ARTICLE VI
TERMINATION

6.1    <u>Termination</u>.

The financing arrangements contemplated hereby shall be in effect until the Commitment Termination Date, and the Loans and all other Obligations shall be automatically due and payable in full on such date.

6.2    <u>Survival of Obligations Upon Termination of Financing Arrangements</u>.

Except as otherwise expressly provided for in the Loan Documents, no termination or cancellation (regardless of cause or procedure) of any financing arrangement under this Agreement shall in any way affect or impair the obligations, duties and liabilities of the Borrower or the rights of Lender relating to any unpaid portion of the Loans or any other Obligations, due or not due, liquidated, contingent or unliquidated or any transaction or event occurring prior to such termination, or any transaction or event, the performance of which is required after the Commitment Termination Date.

Except as otherwise expressly provided herein or in any other Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Borrower, and all rights of Lender, all as contained in the Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect until the Commitment Termination Date.

ARTICLE VII
EVENTS OF DEFAULT; RIGHTS AND REMEDIES

7.1    <u>Events of Default</u>.

Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court, and upon five (5) days written notice to Borrower and the U.S. Trustee, and filing of such notice with the Bankruptcy Court, and subject to <u>Section 7.2</u>, the occurrence of any one or more of the following events (regardless of the reason therefore) shall constitute an "<u>Event of Default</u>" hereunder:

(a)    (i) Borrower shall fail to pay any Obligation or any other amount payable hereunder; or

(b)    One or more judgments or decrees shall be entered after the Petition Date against the Borrower involving in the aggregate a liability (to the extent not covered by third- party insurance as to which the insurer has acknowledged coverage) of $10,000 or more, net of insurance proceeds, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof; or

(c)    The occurrence of any additional "Event of Default" identified in the Interim Order (or, when applicable, analogous paragraph of the Final Order) not identified herein; or

(d)      The breach of any representation or warranty that has a Material Adverse Effect on the business or assets of the Borrower; or

(e)      The breach of any affirmative or negative covenant; or

(f)      Any event causing any interruption in Borrower's possession, occupancy or quiet enjoyment of any of Borrower's leasehold interests; or

(g)      The occurrence of any of the following in the Chapter 11 Case:

(i)      the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or Borrower shall file a motion or other pleading seeking the dismissal of any of the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise;

(ii)      the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any of the Borrower (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code);

(iii)      the entry of an order by a court of competent jurisdiction (1) reversing, staying, vacating or rescinding the Final Order, or otherwise ceases to be in full force and effect or (2) amending, supplementing or otherwise modifying the Interim Order or the Final Order without the written consent of the Lender or the filing of a motion for reconsideration in respect of the Loan Commitment, without Lender's consent;

(iv)      Borrower materially violates or breaches the Post-petition Financing Orders or files any pleadings seeking, joining in, or otherwise consenting to any material violation or breach of the Post-petition Financing Orders;

(v)      without prior written consent of Lender, the filing of a motion, taking of any action or the filing of any Reorganization Plan or disclosure statement attendant thereto by the Borrower in the Chapter 11 Case: (1) to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement; (2) to grant any Lien upon or affecting any assets of the Borrower; or (3) any other action or actions adverse to Lender's rights and remedies hereunder;

(vi)      the entry of an order in the Chapter 11 Case granting any other super priority administrative claim or Lien equal or superior to that granted to the Lender;

(vii)      without prior written consent of Lender, the Final Order is not entered within twenty (20) days following entry of the Interim Order by the Bankruptcy Court; or

(viii)      the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement;

(ix)    the Bankruptcy Court shall enter an order or orders granting relief from or modifying the automatic stay applicable under section 362 of the Bankruptcy Code to permit one or more creditors to execute upon, enforce or perfect a lien on any assets of the Borrower;

(x)    the commencement of any suit against the Lender that would in any way reduce, set off, or subordinate the Obligations under this Agreement; if any such suit is commenced by any party other than the Borrower, and in the reasonable judgment of the Lender, such suit has a reasonable possibility of success, and if successful, would be reasonably likely to have a material adverse effect on (1) the Borrower or (2) Borrower's business or its ability to repay the Loan made under this Agreement;

(xi)    the payment of, or application for authority to pay, any prepetition claim without the Lender's prior written consent or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement; or

(xii)    the failure of the Borrower to comply with the Budget.

7.2    <u>Remedies</u>.

Upon the occurrence and during the continuance of an Event of Default, and without further order of or application to the Bankruptcy Court, the Lender may upon five (5) days prior written notice to the Borrower (with a copy to the United States Trustee for the Southern District of West Virginia), and the filing of such notice with the Bankruptcy Court, take one or more of the following actions, at the same or different times:    (i) terminate forthwith the Loan Commitments; (ii) declare the Loan to be forthwith due and payable, whereupon the principal of such Loan, together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; and (iii) take any other action or exercise any and all other rights or remedies under the Loan Documents, and under applicable law available to the Lender, provided that Lender may not take any action that would result in a lien on assets of the Borrower or violate the terms of the Interim Order.

ARTICLE VIII
MISCELLANEOUS

8.1    <u>Amendments and Waivers</u>.

Neither this Agreement, the Note or any other Loan Document, nor any terms hereof or thereof may be amended, restated, supplemented or modified except in writing signed by the parties hereto.

8.2    <u>No Waiver; Cumulative Remedies</u>.

No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a

waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

8.3   <u>Survival of Representations and Warranties</u>.

All representations and warranties made hereunder, in any other Loan Documents and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Note and the making of the Loan hereunder.

8.4   <u>Successors and Assigns; Participations and Assignments</u>.

(a)   Subject to the limitations of the Interim Order, this Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, including any trustee appointed in this case.

(b)   Lender may, in accordance with applicable law, sell or assign its rights under this Agreement and any Obligations of Borrower hereunder.

(c)   The Borrower authorizes Lender to disclose to any assignee (each, a "Transferee") and any prospective Transferee, any and all financial information in Lender's possession concerning the Borrower which has been delivered to Lender, subject, however, to the same confidentiality requirements as exist between Borrower and Lender.

8.5   <u>Counterparts</u>.

This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by telecopy), and all said counterparts taken together shall be deemed to constitute one and the same instrument. A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Lender.

8.6   <u>Severability</u>.

Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.7   <u>Governing Law</u>.

THIS AGREEMENT AND THE REVOLVING NOTES AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND THE REVOLVING NOTES SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WEST VIRGINIA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF.

8.8    Submission to Jurisdiction; Waivers.    Borrower and Lender hereby irrevocably and unconditionally:

(a)    submit for themselves and their property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the jurisdiction of the Bankruptcy Court;

(b)    consent that any such action or proceeding may be brought in the Bankruptcy Court and waive any objection that they may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same;

(c)    agree that nothing contained herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(d)    waive, to the maximum extent not prohibited by law, any right they may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

8.9    No Waiver.

No failure on the part of Lender to exercise, and no delay in exercising, any right, power or remedy hereunder or any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

IN WITNESS WHEREOF, the parties hereto has caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

FREEDOM INDUSTRIES, INC.. Borrower
and Debtor, Debtor-in-Possession


By: _____
Name: _____
Title: _____



WV FUNDING, LLC, Lender, a West Virginia
Limited Liability Company,

By:  Mountaineer Funding, LLC, a West Virginia
Limited Liability Company, Member

By: _____
Name: _____
Title: _____

**EXHIBIT "2" TO DIP ORDER**

**DIP BUDGET**

Freedom Industries
Interim DIP Budget
1/17/2014