## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| **FREEDOM INDUSTRIES, INC.** | ) | Case No. 2:14-bk-20017 |
| | ) | |
| Debtor. | ) | Docket No. \_\_\_\_ |
| | ) | |

### EXPEDITED MOTION FOR ENTRY OF ORDER APPROVING SALE OF THE ASSETS OF THE POCA BLENDING BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

The debtor and debtor-in-possession ("Freedom" or the "Debtor") in the above-captioned case, by and through its undersigned counsel, hereby files this Expedited Motion for Entry of an Order Approving the Sale of the Assets of the Poca Blending Business (as defined below) Free and Clear of All Liens, Claims, Encumbrances and Interests (the "Motion"), and in support thereof, respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 363 and 365, and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On January 17, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court").

5. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. Freedom is engaged principally in the business of producing specialty chemicals for the mining, steel and cement industries. It is a leading supplier of freeze conditioning agents, dust control palliatives, flotation reagents, water treatment polymers and other specialty chemicals.

7. Freedom's corporate office is located in Charleston, West Virginia, and as of the Petition Date it operated two production facilities located in (a) Nitro, West Virginia (the "Nitro Facility") and (b) Charleston, West Virginia (the "Charleston Facility").

8. The Nitro Facility (a/k/a Poca Blending) operated four emulsion lines, two FCA Blenders, and one specialty chemical reactor (the "Poca Blending Business"). It also has a fully staffed laboratory for quality assurance and research. Finished goods are distributed via truck and rail.

9. The Debtor's bankruptcy filing was the result of an incident that occurred on January 9, 2014 involving one of Freedom's storage tanks located at its Charleston Facility (the "Incident"). Facts surrounding the Incident are subject to pending investigations by Freedom and various regulatory and other governmental authorities.[1]

---

[1] The facts and circumstances relating to the Incident as described herein are intended for explanatory purposes only and shall not prejudice the rights, claims, or defenses of any party in interest, including, without limitation, the rights

10. On February 5, 2014, the Office of the United States Trustee for the Southern District of West Virginia (the "U.S. Trustee") filed the Notice of Appointment of Committee of Unsecured Creditors [Docket No. 117] (the "Committee").

11. On March 18, 2014, the Court entered the Order Approving Application of the Debtor for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Appointment of Mark Welch of MorrisAnderson & Associates, Ltd. as Chief Restructuring Officer [Docket No. 228] (the "CRO Order"). Pursuant to the CRO Order, Mark Welch was appointed as Chief Restructuring Officer (the "CRO"), effective as of March 18, 2014, and has actively served in this role since March 18, 2014.

12. On May 5, 2014, the Debtor and Lexycon, LLC (the "Buyer") entered into that certain Asset Purchase Agreement (the "Agreement") pursuant to which the Buyer seeks to purchase and the Debtor intends to sell, transfer and convey all of its right, title and interest in certain assets, properties and rights associated with the Poca Blending Business (collectively, the "Purchased Assets") on an "as is-where is" basis. A copy of the Agreement is attached hereto and incorporated herein by reference as Exhibit "B".

13. The factual basis for this Motion and certain background related to the Agreement are more fully described in the Declaration of Mark Welch, Chief Restructuring Officer of the Debtor, attached hereto and incorporated herein by reference as Exhibit C (the "Welch Declaration").

---

of any purported holder of a claim arising from or related to the Incident, and correspondingly, all rights, claims, and defenses of the Debtor and other parties in interest are preserved.

**A.      Summary of the Agreement**

14.     A summary of the principal terms of the Agreement,[2] which are set forth in full in the Agreement, is as follows:

    a.      **Purchased Assets**

- Personal Property: The machinery, equipment, parts, spare parts, computers, computer equipment, office furniture and fixtures, tools, supplies and other tangible personal property primarily owned, used or held for primary use in or relating to the Poca Blending Business or otherwise required to continue the Poca Blending Business as conducted on the Closing Date, including the assets set forth in Schedule 2.1(a)(1) and Schedule 2.1(a)(2) attached to the Agreement.

- Inventory: The materials which are related to and produced by the Poca Blending Business, including, without limitation, the inventory generally delineated by type in Schedule 2.1(b) attached to the Agreement.

- Intangible Personal Property: All goodwill associated with the Poca Blending Business, the trade names, "Poca Blending", all licenses, and permits associated with the Poca Blending Business (to the extent transferrable under West Virginia law), the domain name "www.pocablending.com" and subdomain names and email addresses associated therewith.

- Vehicles: All titled and untitled motor vehicles used in connection with the Poca Blending Business and listed in Schedule 2.1(d) attached to the Agreement.

- Records and Customer Lists: All (i) documents related to the Poca Blending Business, including, but not limited to, production records and engineering records, (ii) purchasing and sales records and orders and contracts, accounting records and customer vendor lists for all of the Debtor's businesses, and (iii) any such documents maintained in connection with any computer system.

- Orders and Literature: All operating manuals, training aids, purchase order forms, forms, labels, stationary, shipping

---

[2] This summary is qualified in its entirety by reference to the provisions of the Agreement attached hereto as Exhibit A. In the event of any inconsistencies between the provisions of the Agreement and the terms described herein, the terms of the Agreement shall govern. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

4

materials, catalogues, brochures, art work, photographs and advertising materials related to the Poca Blending Business.

b. **Excluded Assets**

- All cash and cash equivalents;

- Accounts, including accounts receivable for work performed by the Debtor or purchase orders filled by the Debtor in the ordinary course of its Business prior to the Closing[3];

- All prepaid expenses, deposits and deferred charges;

- All contracts of the Debtor;

- All insurance policies and proceeds thereof;

- All claims and causes of action not specifically related to the Purchased Assets;

- All environmental remediation sampled material including contained water and test samples and all written records and test results relating thereto; and

- All assets that are not Purchased Assets subject to sale pursuant to Section 2.1 of the Agreement, including without limitation, all assets of the Seller not associated with or used primarily in the Poca Blending Business.

c. **No Assumption of Liabilities**

- Buyer will not assume any Liabilities or obligations of the Debtor relating to the Poca Blending Business or Purchased Assets, other than Liabilities with respect to the Contracts as provided by section 365(k) of the Bankruptcy Code.

- Excluded Liabilities include, without limitation, the following:

    o Liabilities for federal, state and local income and franchise taxes and any other taxes incurred by the Debtor in the conduct of the Poca Blending Business or with respect to the Purchased Assets before Closing;

---

[3] Records are Purchased Assets. The Buyer has agreed to provide the Debtor copies of all records required by the Debtor to administer its bankruptcy estate.

5

- o all Liabilities and obligations relating to any employee or any employee benefits, including, without limitation, liability under the WARN Act;

- o all Liabilities or obligations to the extent relating to the acquisition, ownership or use of any of the Excluded Assets;

- o other than as applicable West Virginia law may require with respect to licenses and permits that constitute Purchased Assets, all Liabilities or obligations arising under Environmental Laws in connection with facts, events, conditions, actions or omissions existing on or occurring prior to Closing in the conduct of the Poca Blending Business or use of the Purchased Assets;

- o all claims for defects of any nature whatsoever of the Inventory sold prior to the Closing or claims for product liability or under warranties associated with the Poca Blending Business, or Purchases Assets (whether known or unknown, and whether recorded or reported), in each case other than those relating to Purchased Assets produced by Buyer after Closing; and

- o any Liability with respect to any litigation or threatened litigation, claims, obligations, damages, costs and expenses arising out of, in connection with, or as a result of the conduct of the Poca Blending Business by the Debtor before Closing or any use of the Purchased Assets before Closing.

d. **Purchase Price**

- Purchase Price: The consideration to be paid for the Purchased Assets shall be Five Hundred Seventy Five Thousand ($575,000) Dollars, payable (i) One Hundred Thousand ($100,000) Dollars by earnest money deposited by check or wire transfer to a mutually agreeable escrow agent; and (ii) the balance of the Purchase Price in cash by wire transfer upon Closing.

e. **Auction with Other Potential Purchaser and Break-Up Fee**

- The sale of the Purchased Assets to the Buyer contemplated by the Agreement is not subject to a general public auction or higher or better offers other than from one other potential buyer (the "Potential Purchaser") with whom Seller is negotiating,

6

and which could result in an auction for the Purchased Assets between the Buyer and the Potential Purchaser.

- The Purchased Assets will not be sold to any other party unless such party appears at the Sale Hearing and agrees to execute an agreement of sale substantially similar to the Agreement, with no due diligence, financing or insurance coverage contingency, and the Closing Date is no later than May 20, 2014.

- Other than with respect to the Potential Purchaser or a sale to a party appearing at the Sale Hearing and satisfying the requirements set forth directly above, the Debtor agrees to oppose any motion or effort to permit or cause any upset bid, auction sale or other sale of the Purchased Assets or the Poca Blending Business.  In the event that the Bankruptcy Court allows an upset bid, auction sale or other sale to a party other than the Buyer, the Seller will support the payment of a break-up fee to the Buyer in the amount of $34,500, representing six (6%) percent of the Purchase Price.

f. **Closing**

- The Closing is contingent upon approval of the Sale Order by the Bankruptcy Court by May 13, 2014 and subsequent closing on the transaction by the Buyer by May 20, 2014 or such other date and place as the Debtor and Buyer may mutually agree.

g. **Termination**

- The Agreement may be terminated at any time before the Closing by:

    o mutual written consent of the Debtor and Buyer;

    o either the Debtor on the one hand, or Buyer on the other, if there has been a material breach on the part of the other of a representation, warranty or agreement contained in the Agreement, or in any writing delivered pursuant to the provisions of this Agreement;

    o either the Debtor or Buyer if the Bankruptcy Court has not entered the Sale Order by May 13, 2014 or if the Closing has not occurred by May 20, 2014 (unless the failure to consummate the Closing by such date shall be due to the failure of the party seeking to terminate the Agreement to have fulfilled any of its obligations under this Agreement);

7

- either the Debtor or Buyer if any court of competent jurisdiction or other competent authority shall have issued a statute, decree or injunction permanently restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement and such statute, decree or injunction shall have become final and non-appealable; or

- by either the Debtor or Buyer in the event that the Purchased Assets or Poca Blending Business is sold to the Potential Purchaser for a party other than a party affiliated with the Buyer.

**B.	Auction Procedures**

15.	For the reasons explained in the Welch Declaration, no auction for the Purchased Assets is contemplated unless the Potential Purchaser, a party that has negotiated a draft agreement the CRO and participated with in a diligence process, or any other party (i) submits a notice of intention to bid by the objection deadline to the Motion, (ii) provides an executed asset purchase agreement in substantially similar form to the Agreement other than (a) the name of the purchaser [i.e., cover page, pg. 1, pg. 21 of Agreement]; (b) the Purchase Price [i.e., Section 3.1 of Agreement]; (c) the deletion of all provisions relating to a Break-Up Fee [i.e., Section 6.7, Section 7.3, Section 7.6 of Agreement]; and (d) revisions to representations and warranties specific to the proposed purchaser [i.e., Article VI of Agreement]; and (iii) pays a deposit of $100,000 to counsel to the Debtor, which shall be held in counsel's IOLTA account. In the event that the Potential Purchaser or any other party meets these requirement, then an auction for the Purchased Assets shall be conducted at the Sale Hearing.

**RELIEF REQUESTED**

16.	The CRO has determined that the Freedom name is irrevocably tainted due to the Incident such that absent the sale of the Purchased Assets, the Nitro Facility would need to be demolished. In reaching this conclusion, the CRO researched the cost of demolition and

determined that it would cost the Debtor's bankruptcy estate approximately $400,000 net of the liquidation value of the Purchased Assets to undertake the demolition of the Nitro Facility.

17. Given the status of the Debtor resulting from the Incident, the CRO initially determined in his reasoned business judgment that a liquidation of saleable assets and demolition of the infrastructure comprising the Nitro Facility was the only viable option for the Nitro Facility. The CRO has sought multiple proposals for the liquidation of assets and demolition of the infrastructure comprising the Nitro Facility. The media attention associated with the Debtor and the underlying nature of the assets comprising the Nitro Facility led the CRO to determine that on a net-net basis, these assets were actually a liability to the Debtor and its bankruptcy estate.

18. Media coverage regarding the Debtor and its circumstances has been extensive. The Buyer was aware of the Debtor's circumstances because its affiliated company was a supplier to the Debtor. The alternative prospective purchaser became aware of the Debtor's circumstances as a result of the extensive media coverage relating to the Debtor's circumstances. Since his appointment, several other parties have made inquiry of the CRO regarding the Nitro Facility, but no other parties have determined to the best knowledge, information and belief of the CRO to pursue a transaction. The Buyer's bid is an arm's length and fully negotiated offer, is not the product of fraud or collusion between the Buyer and other interested parties or the CRO. Furthermore, the Buyer (i) is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code, (ii) is not a successor to the Debtor, and (iii) has no continuity of enterprise with the Debtor.[4] In addition no owner or executive of the Buyer is or was an owner or executive of the Debtor nor the predecessor in interest to the Debtor.

---

[4] For purposes of full disclosure, the Debtor notes that the President of the Buyer is Kevin Skiles. Kevin Skiles, as described in the Welch Declaration, is the former Vice President of Research and Technology of the Debtor.

19. Accordingly, the CRO has determined in his sound business judgment that the sale of the Purchased Assets to the Buyer is in the best interests of the Debtor, its estate, creditors and all other parties in interest.

## APPLICABLE AUTHORITY

A. **Approval of the Sale is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code**

20. Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Rule 6004(f) states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction. Fed. R. Bankr. P. 6004(f). Under section 105(a) of the Bankruptcy Code, "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21. Assets of the Debtor may be sold outside of the ordinary course of business, pursuant to Bankruptcy Code section 363(b)(1), if a sound business purpose exists for doing so. In re WBQ P'ship, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (citing Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)); see also In re W.A. Mallory Co., Inc., 214 B.R. 834, 836 (Bankr. E.D. Va. 1997).

22. To satisfy the "sound business purpose test," the debtor must demonstrate that (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale was proposed in good faith; (3) the purchase price is fair and reasonable; and (4) adequate and reasonable notice of the sale has been provided. In re WBQ P'ship, 189 B.R. at 102.

---

Further, Dennis Farrell, one of the owners of the predecessor to the Debtor and a former employee of the Debtor, is or will be a consultant to the Buyer.

23. Based upon the results of his analysis, the CRO has concluded that the sale of the Purchased Assets to the Buyer pursuant to the Agreement will maximize the recovery to the Debtor's estate and avoid further deterioration of the value of the Purchased Assets. Maximizing asset value and avoiding asset deterioration are sound business purposes that warrant authorizing the proposed sale to the Buyer. In addition, the sale was negotiated in good faith and the Buyer's bid exceeded the Potential Purchaser's offer and no other bids were submitted. This leads the CRO to conclude that the Purchase Price is fair and reasonable based on his marketing efforts.

24. Taking all of these factors into account, the CRO believes that the contemplated sale of the Purchased Assets to the Buyer is in the best interests of the Debtor, its estate, creditors and all other parties in interest.

## II. The Purchaser is a Good Faith Purchaser Pursuant to Section 363(m) of the Bankruptcy Code and the Transaction Contemplated by the Agreement Should Receive the Protections of Section 363(n) of the Bankruptcy Code

25. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Fourth Circuit Court of Appeals has "adopt[ed] the traditional equitable definition that has been adopted by various courts of appeal: 'one who purchases the assets for value, in good faith, and without notice of adverse claims.'" Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985) (citations omitted).

26. Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

11 U.S.C. 363(n).

27. The CRO submits, and will present evidence at the sale hearing (the "<u>Sale Hearing</u>") if necessary, that the Agreement reflects a fully negotiated, arm's-length transaction. Throughout the negotiations, the CRO and Buyer have at all times acted in good faith. Moreover, the Buyer's bid is not the product of fraud or collusion between the Buyer and other interested parties or the CRO, or an attempt to take unfair advantage of other interested parties.

28. As a result of the foregoing, the CRO requests that the Court make a finding that the transaction contemplated by the Agreement and the Purchase Price represent reasonably equivalent value and fair consideration under applicable law. The Debtor further requests that this Court make a finding that the Buyer has acquired the Purchased Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code. Finally, the CRO requests that this Court make a finding that the transaction contemplated by the Agreement is not avoidable under section 363(n) of the Bankruptcy Code.

**III. The Sale of the Purchased Assets Should Be Free and Clear of All Liens, Claims, Encumbrances and Interests Under Section 363(f) of the Bankruptcy Code.**

29. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;

  (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

  (4) such interest is in bona fide dispute; or

  (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

  30. Section 363(f) permits the sale of estate property free and clear of all liens, claims, interests and encumbrances if any one of the five conditions above is met. See, e.g., In re Laines, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

  31. Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively. See In re TWA, Inc., 322 F.3d 283, 289 (3d Cir. 2003); see also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just *in rem* interests); In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens."). In addition, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace. See In re TWA, Inc., 2001 Bankr. LEXIS 723, at *8-*10 (Bankr. D. Del. Mar. 27, 2001).

  32. As described above, the CRO asserts that the sale of the Purchased Assets to the Buyer represents the maximum recovery possible for the benefit of the Debtor's estate. The CRO also submits that the sale of the Purchased Assets satisfies the requirements of section 363(f) of the Bankruptcy Code. Therefore, the CRO requests that the Court find that the sale of the Purchased Assets is free and clear of all liens, claims, interests and encumbrances.

**IV.    Relief Under Bankruptcy Rule 6004(h) is Appropriate**

33.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  In order to allow the Buyer to immediately close on the transaction contemplated by the Agreement, the Debtor requests that any sale order be effective immediately by providing that the 10 day stays set forth in Bankruptcy Rule 6004(h) be waived.

### NO PRIOR REQUEST

34.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order, substantially in the form attached hereto as Exhibit A, (i) approving the sale of the Purchased Assets to the Buyer free and clear of all liens, claims, interests and encumbrances, (ii) authorizing the assumption and assignment of the Contracts, and (iii) granting such other relief as the Court deems just and proper.

Dated: May 5, 2014

Respectfully submitted,

**BARTH & THOMPSON**

Stephen L. Thompson (WV 3751)
J. Nicholas Barth (WV 255)
Barth & Thompson
P.O. Box 129
Charleston, West Virginia 25321
Telephone: (304) 342-7111
Facsimile: (304) 342-6215

and

**MCGUIREWOODS LLP**

/s/ Mark E. Freedlander
Mark E. Freedlander (PA 70593)
Jason P. Alter (PA 307596)
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050

Attorneys for the Debtor and
Debtor-in-Possession