UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| FREEDOM INDUSTRIES, INC. | ) | Case No. 2:14-bk-20017 |
|  | ) |  |
| Debtor. | ) | Docket No. _____ |
|  | ) |  |

**MOTION PURSUANT TO 11 U.S.C. § 363(b)(1) FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO USE PROPERTY OF THE ESTATE OUTSIDE THE ORDINARY COURSE OF BUSINESS BY ENTERING AGREEMENT FOR DEMOLITION OPERATIONS IN FURTHERANCE OF WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION CONSENT ORDER AND REQUEST THAT HEARING ON THE MOTION BE HELD JUNE 10, 2014**

The debtor and debtor-in-possession ("Freedom" or the "Debtor") in the above-captioned case, by and through its undersigned counsel, hereby files this motion ("Motion") pursuant to 11 U.S.C. § 363(b)(1) for entry of an order substantially in the form of Exhibit A hereto authorizing Debtor to use property of the estate outside the ordinary course of business by entering an agreement for demolition operations in furtherance of West Virginia Department of Environmental Protection Consent Order No. 8034. The Debtor further requests that the Court set the hearing on this Motion for June 10, 2014 at 1:30 p.m. In support of the Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 363(b)(1), and Rules 2002, 6004 and 6006of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

1

## BACKGROUND

4. On January 17, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court").

5. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. Freedom's corporate office is located in Charleston, West Virginia, and as of the Petition Date it operated two production facilities located in (a) Nitro, West Virginia and (b) Charleston, West Virginia (the "Etowah River Terminal").

7. The Etowah River Terminal is located on the Elk River and is accessible by barge and truck. It is comprised of multiple large storage tanks and has significant storage capacity, as well as two computer controlled truck loading stations.

8. The Debtor's bankruptcy filing was the result of an incident that occurred on January 9, 2014 involving one of Freedom's storage tanks located at the Etowah River Terminal (the "Incident"). Facts surrounding the Incident are subject to pending investigations by Freedom and various regulatory and other governmental authorities.[1]

9. On February 5, 2014, the Office of the United States Trustee for the Southern District of West Virginia (the "U.S. Trustee") filed the Notice of Appointment of Committee of Unsecured Creditors [Docket No. 117] (the "Committee").

---

[1] The facts and circumstances relating to the Incident as described herein are intended for explanatory purposes only and shall not prejudice the rights, claims, or defenses of any party in interest, including, without limitation, the rights of any purported holder of a claim arising from or related to the Incident, and correspondingly, all rights, claims, and defenses of the Debtor and other parties in interest are preserved.

10. On March 18, 2014, the Court entered the Order Approving Application of the Debtor for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Appointment of Mark Welch of MorrisAnderson & Associates, Ltd. as Chief Restructuring Officer [Docket No. 228] (the "CRO Order"). Pursuant to the CRO Order, Mark Welch was appointed as Chief Restructuring Officer (the "CRO"), effective as of March 18, 2014, and has actively served in this role since March 18, 2014.

11. As the Court is aware, on January 24, 2014, the West Virginia Department of Environmental Protection ("WVDEP") and the Debtor dually executed that certain Consent Order Number 8034 (the "WVDEP Consent Order"). The WVDEP Consent Order that requires, among other things, the Debtor dismantle and manage removal of all above ground storage tanks, associated piping, machinery and appurtenances associated with the bulk storage operations at the Etowah River Terminal (collectively the "Demolition Operations"). In connection with the WVDEP Consent Order, the Debtor's court-approved environmental consultant, Civil & Environmental Consultants, Inc. ("CEC") prepared a Tank Decommissioning Plan dated March 7, 2014 (the "CEC Tank Plan") and companion Remediation Plan dated March 17, 2014 (the "CEC Remediation Plan"). Each of the CEC Tank Plan and the CEC Remediation Plan were approved by the WVDEP.

12. As set forth in more detail in the Declaration of the CRO, Mark Welch, attached hereto and incorporated herein by reference as Exhibit B, pursuant to the CEC Tank Plan, the CRO solicited competing bids for performance of the Demolition Operations. After meeting with numerous contractors at the Etowah River Facility from April 16, 2014 through May 1, 2014, the CRO received four actual written offers to perform the Demolition Operations.

13. Following review of each written offer and considering among other factors, (i) the value each offer provided to the Debtor and its bankruptcy estate, (ii) the experience of each respective contractor, and (iii) each contractor's reputation and diligence regarding the Demolition Operations. After consultation with CEC and WVDEP, the CRO submits that the offer from Independence Excavating, Inc. ("Independence") is in the best interests of the Debtor, its bankruptcy estate and creditors.

14. Through his due diligence, the CRO determined that Independence has significant experience in the demolition industry and is well-suited to perform the Demolition Operations. Independence was also the only firm that satisfied the financial parameters required by the CRO that was prepared to execute an agreement in a form deemed appropriate under the circumstances. The Independence offer clearly maximizes the value of the Debtor's Etowah River Terminal by allowing the Debtor to perform the Demolition Operations at no out-of-pocket cost to the bankruptcy estate and puts the Debtor in a position to thereafter implement the CEC Remediation Plan.

15. The CRO provided Independence with the WVDEP Consent Order and the CEC Tank Plan. The CRO and CEC have regularly updated WVDEP about the CRO's proposed arrangement with prospective demolition firms including Independence. Accordingly, the CRO submits that the Independence offer will result in full compliance with the demolition requirements under the WVDEP Consent Order and be consistent with the CEC Tank Plan.

16. The Debtor submits that the demolition agreement (the "Agreement") submitted by Independence is in the best interest of the Debtor, its bankruptcy estate and creditors. The Agreement provides as follows:

    a. Independence will demolish certain storage tanks, associated piping, machinery, flare tanks, docket

4

        equipment, a dike containing wall and appurtenances associated therewith;

b.   Independence will shall maintain water supply and fire extinguishers for fire/dust suppression, shall follow all plant safety procedures, and shall perform a job safety analysis each day;

c.   Independence will maintain commercially reasonable general liability and workers' compensation insurance naming the Debtor as an additional loss payee during the period in which the project is being performed;

d.   Independence will pay the Debtor Twenty Five Thousand Dollars ($25,000) on a guaranteed basis at the time Cambria Contracting commences Demolition Operations.[2]

17.   The Debtor is not required under the Agreement to make any payments to Independence for the Demolition Operations. The Agreement provides for demolition of specified tanks and other appurtenances and removal of that which has been demolished by Independence, but does not provide for remediation of the Etowah River Terminal. This was mandated by the CRO because the CRO views remediation as the third step of a 3 part process (i.e., material removal, demolition, then remediation).

18.   The CRO expects all material to be removed from tanks subject to demolition on or before June 10, 2014, and Independence is prepared to commence Demolition Operations promptly following approval of this Motion by the Court and the issuance of permits necessary for the proposed demolition. The CRO understands that the Demolition Operations will less than 3 weeks, and should, in fact, take substantially less time. The CRO's internal budget and work plan provided for demolition and removal of materials resulting from Demolition Operations to be fully completed by the end of June, 2014.

---

[2] The Agreement is attached hereto and incorporated herein by reference as Exhibit C. In the event of any conflict between the summary contained herein and the Agreement, the terms and conditions of the Agreement will control.

**RELIEF REQUESTED**

19. By this Motion, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, authorizing the Debtor to use property of the estate identified in the Agreement, which property will be demolished and removed pursuant to the terms of the Agreement, outside of the ordinary course of its business by entering the Agreement.

**BASIS FOR RELIEF**

20. Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting section 363(b)(1), courts have held that a transaction involving property of the estate generally should be approved so long as the debtor can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n.16 (8th Cir. 1997); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Crystalin LLC*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003). The court should give deference to a debtor's application of its sound business judgment in the use, sale or lease of property. *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

21. Here, the CRO has determined that using the assets that will be demolished and removed pursuant to the Agreement is in the best interests of the Debtor, its bankruptcy estate and creditors because (i) the Agreement allows the Debtor to perform the Demolition Operations

required by the WVDEP Consent Order; (ii) the Agreement results in no out-of-pocket expense to the Debtor or its bankruptcy estate; (iii) the Agreement represents the offer that provides the estate with maximum value (i.e., $25,000) for the assets being demolished and removed irrespective of the amount of saleable scrap actually derived from the Demolition Operations; (iv) the Agreement ensures that the Demolition Operations are conducted in a safe, prompt and responsible manner that complies with the CEC Tank Plan by an experienced contractor.

22. For these reasons, the Debtor respectfully submits that approval of the Agreement is an exercise of sound business judgment, is in the best interest of the Debtor and its estate, and is therefore warranted.

### REQUEST FOR HEARING ON MOTION BE HELD JUNE 10, 2014

23. There is currently a hearing scheduled in the Debtor's case for June 10, 2014 at 1:30 p.m.

24. The Debtor submits that promptly commencing Demolition Operations is required in order for the Debtor to remain in compliance with the WVDEP Consent Order.

25. Therefore, the Debtor respectfully requests that the Court set the hearing for this Motion on June 10, 2014 at 1:30 p.m.

### NOTICE TO PARTIES UNDER THE EVIDENCE PROTECTION ORDER

26. On February 21, 2014, the Court entered an Order Regarding Site Access and Evidence Preservation (the "Site Access and Preservation Order"). Pursuant to the Site Access and Preservation Order, the Debtor is required to provide a minimum of forty-eight (48) hours written notice of the Debtor's intention to move, alter, or subject to any destructive testing certain tanks which formerly held MCHM, specifically tanks number 395, 396, and 397 to the following parties (the "Notice Parties") via the following email addresses: (1) Roger Decanio

(rogerdecanio@yahoo.com); (2) Anthony Majestro (amajestro@powellmajestro.com); (3) Alvin Emch (aemch@jacksonkelly.com); (4) Douglas L. Lutz (dlutz@fbtlaw.com); and (5) Stephen N. Haughey (shaughey@fbtlaw.com). Promptly after the filing of the Motion, the Debtor will provide the Motion, Declaration and Agreement to the Notice Parties evidencing the Debtor's intention to perform the Demolition Operations.

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A, authorizing and approving the Agreement, and granting such other relief as may be just and proper.

Dated: May 30, 2014

Respectfully submitted,

**BARTH & THOMPSON**

Stephen L. Thompson (WV 3751)
J. Nicholas Barth (WV 255)
Barth & Thompson
P.O. Box 129
Charleston, West Virginia 25321
Telephone: (304) 342-7111
Facsimile: (304) 342-6215

and

**MCGUIREWOODS LLP**

/s/ Mark E. Freedlander
Mark E. Freedlander (PA 70593)
Scott E. Schuster (PA 203766)
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050

Attorneys for the Debtor and
Debtor-in-Possession