# EXHIBIT A – PROPOSED APPROVAL ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re ) | |
| ) | **Chapter 11** |
| **FREEDOM INDUSTRIES, INC.** ) | |
| ) | **Case No. 2:14-bk-20017** |
| Debtor. ) | |
| ) | |

**ORDER APPROVING DEBTOR'S MOTION TO APPROVE SETTLEMENT**
**AGREEMENT AND INSURANCE BUY-BACK BETWEEN DEBTOR AND INSURER**

Upon the Motion[1], dated June 24, 2014, of Freedom Industries, Inc. for an order pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004 and 9019 of the Bankruptcy Rules (i) authorizing Freedom to enter into a compromise and settlement with AIG Specialty and approving the Settlement Agreement in all respects; (ii) authorizing Freedom to provide the releases set forth in the Settlement Agreement; (iii) authorizing the sale of the Excess Policy back to AIG Specialty pursuant to the terms and conditions of the Settlement Agreement, free and clear of all Interests; and (iii) enjoining certain Claims against AIG Specialty, as described in the Settlement Agreement and Paragraph G of this Order, below (the "**Injunction**"); and the appearances of all interested parties and all responses and objections to the Motion, if any, having been duly noted in the record of the hearing held on July [__], 2014 (the "**Hearing**"), upon the record of the Hearing, the Motion, said responses and objections, if any and after due deliberation and sufficient cause appearing therefore, the Court hereby makes the following:

---

[1] Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement (as defined herein).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

### Jurisdiction, Final Order and Statutory Predicates

1.  The Court has jurisdiction over the Motion and relief requested therein, including responses and objections thereto, if any, pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

3.  The statutory predicates for the relief sought in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### Retention of Jurisdiction

4.  It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Settlement Agreement, and to adjudicate, if necessary, any and all disputes arising under or relating to, or affecting, any of the transactions contemplated under the Settlement Agreement.

### Notice of the Motion

5.  Freedom has provided due and adequate notice of the Motion, the Hearing, the Settlement Agreement and the subject matter thereof to all parties in interest pursuant to Bankruptcy Rules 2002 and 6004.  Such notice was good and sufficient under the particular circumstances, and no further notice is necessary.  Without limiting the generality of the foregoing, adequate notice of the Motion, the Hearing and the Settlement Agreement has been

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

provided, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded, to all parties in interest, as described in the Motion.

**Sound Business Judgment and Reasonableness**

6.      The relief requested in the Motion is in the best interests of Freedom's Estate, its creditors, and other parties-in-interest. Freedom has demonstrated good, sufficient and sound business purposes and justifications for the relief requested in the Motion and the approval of the transactions contemplated thereby and has satisfied the requirements of the "business judgment" test for purposes of the Motion and the relief requested thereunder.

7.      The Settlement Agreement, including without limitation, the sale of the Excess Policy[3] free and clear of any and all Interests, is fair and reasonable and in the best interests of Freedom and its Estate. The Settlement Amount represents fair and reasonable consideration for the sale of the Excess Policy, the release of Claims, and the other provisions as set forth in the Settlement Agreement. Upon payment of the Settlement Amount, Freedom will continue to have coverage available under the Primary Policy up to a remaining $1 million aggregate limit, subject to the terms and conditions of the Primary Policy. The Settlement Agreement is also in the best interests of the Incident Claimants because the Settlement Amount will be held by Freedom pending further order of Court.

8.      Freedom has demonstrated that its probability of success in litigation over the matters resolved by the Settlement Agreement is uncertain; that the litigation of the matters resolved by the Settlement Agreement would be complex and costly to Freedom's Estate, is

---

[3] The Excess Policy constitutes property of Freedom's bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code. Based on the circumstances of this particular case and the particular Policies, the bankruptcy estate has an equitable property interest in the proceeds of the Policies pursuant to section 541(a) of the Bankruptcy Code because conflicting claims will likely consume the Policies' limits, defense costs will erode the limits of the Policies and the exhaustion of the Policies will have an impact on the administration of the bankruptcy estate.

consistent with the reasonable range of potential litigation outcomes, and is in the best interests of Freedom, its Estate, and its creditors, including, without limitation, the Incident Claimants.

### Good Faith of Purchaser of the Policies

9.  The Settlement Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arms-length bargaining positions, and without fraud or collusion.  Each Party to the Settlement Agreement was represented by counsel.  The sale consideration to be realized by Freedom's Estate pursuant to the Settlement Agreement is fair and reasonable.  AIG Specialty is a good faith purchaser of the Excess Policy for value within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protection thereof.  Neither Freedom, nor AIG Specialty, nor any of their representatives, have engaged in any conduct that would (i) cause or permit the Settlement Agreement, or the sale of the Excess Policy to be avoided under Section 363(n) of the Bankruptcy Code, (ii) cause or permit any amounts, costs, attorneys' fees, expenses or punitive damages to be recovered under Section 363(n) of the Bankruptcy Code; or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

### Satisfaction of Section 363(f) Requirements

10.  Freedom may sell the Excess Policy free and clear of Interests under Section 363(f) of the Bankruptcy Code because one or more of the criteria set forth in Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Without limiting the generality of the foregoing, those holders of Interests against any of the Policies who did not object, or who withdrew their objections, to the Motion or the relief requested therein are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code, and each holder of an Interest in the Excess Policy can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by Section 363(f)(5) of the Bankruptcy Code.

11. To the extent any Person has an Interest in the Excess Policy, such Interest is adequately protected as required by Section 363(c) of the Bankruptcy Code by the attachment of such Interest to the proceeds of sale of the policies pursuant to Paragraph F or this Order.

**No Successor Liability**

12. The transfer of the Excess Policy pursuant to the Settlement Agreement does not and will not subject or expose AIG Specialty to any liability, Claim, cause of action or remedy by reason of such transfer under (a) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity; or (b) any employment contract, understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

13. AIG Specialty is not assuming any of Freedom's obligations to its employees by reason of the purchase of the Excess Policy under the Settlement Agreement.

14. No common identity of officers or directors exists between AIG Specialty and Freedom.

15. AIG Specialty is purchasing the Excess Policy pursuant to the Settlement Agreement and this Order. AIG Specialty is not purchasing any other assets of Freedom's Estate. AIG Specialty shall not acquire any responsibility or liability with respect to the Estate's other assets or for any liability of, or Claims against Freedom or its Estate as a result of the purchase of the Excess Policy.

16. A sale of the Excess Policy other than one free and clear of Interests, if possible at all, would impact adversely on Freedom's Estate and would be of substantially less benefit to Freedom, its creditors, and its Estate. AIG Specialty would not purchase the Excess Policy, pay the Settlement Amount, or enter into the other agreements provided for in the Settlement Agreement, were the sale of the Excess Policy not free and clear of all Interests.

### Permanent Injunction

17. Issuing a permanent injunction under Section 105(a) of the Bankruptcy Code is essential to give effect to the sale of the Excess Policy to AIG Specialty free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code and the settlement of matters provided for in the Settlement Agreement. The Injunction as set forth in Paragraph G below is a necessary prerequisite for AIG Specialty's agreement to the terms and conditions of the Settlement Agreement, and AIG Specialty will not consummate the Settlement Agreement including, without limitation, the sale of the Excess Policy in the absence of such a permanent injunction from this Court.

18. To the extent that the holders of present and future Claims have any Interest in the Policies, such Persons are adequately protected in that they will have the right to pursue their Claims against the Settlement Amount with the same validity and priority as against the Policies, subject to the terms and conditions of any further orders of this Court.

19. The terms of the Settlement Agreement and related releases granted to AIG Specialty by Freedom shall constitute exhaustion of any insurance coverage applicable to the Incident.

For all of the foregoing and after due deliberation, IT IS ORDERED, ADJUDGED AND DECREED THAT

  A. The Motion is GRANTED and APPROVED in all respects.

  B. Pursuant to Section 363(b) of the Bankruptcy Code, Freedom is authorized and directed to enter into and consummate the Settlement Agreement, including without limitation, to sell, transfer and convey the Excess Policy to AIG Specialty in accordance with the terms and subject only to the conditions specified herein and in the Settlement Agreement. Freedom and AIG Specialty are each hereby authorized to take all actions and execute all documents and instruments that Freedom and AIG Specialty deem necessary or appropriate to implement and effectuate the transactions contemplated by the Settlement Agreement.

  C. The terms of the Settlement Agreement (including without limitation the releases set forth in Section IV) are approved in their entirety, and this Order and the Settlement Agreement shall be binding upon Freedom, its Estate, AIG Specialty, all Persons holding Interests in the Policies or Claims against Freedom or its Estate, including without limitation, all holders of Incident Claims under the Policies, Freedom's insurers other than AIG Specialty, any actual or potential insureds under the Policies, all other parties in interest, and each of the foregoing Persons' successors and assigns. The sale of the Excess Policy by Freedom to AIG Specialty, effective upon the Approval Date, shall constitute a legal, valid, and effective transfer of the Excess Policy and shall vest AIG Specialty with all right, title, and interest in and to the Excess Policy free and clear of all Interest pursuant to Section 363(f) of the Bankruptcy Code.

  D. AIG Specialty shall pay the Settlement Amount to Freedom as provided in the Settlement Agreement.

  E. The sale of the Excess Policy to AIG Specialty under the Settlement Agreement constitutes a transfer for reasonably equivalent value and fair consideration under Section 548 of the Bankruptcy Code and comparable provisions of non-bankruptcy law.

F. PURSUANT TO SECTIONS 105(A) AND 363(F) OF THE BANKRUPTCY CODE AND SUBJECT TO THE CONSUMMATION, AS OF THE APPROVAL DATE, OF THE SALE OF THE EXCESS POLICY AS PROVIDED UNDER THE SETTLEMENT AGREEMENT, THE EXCESS POLICY SHALL BE AND HEREBY IS TRANSFERRED TO AIG SPECIALTY, FREE AND CLEAR OF ANY AND ALL INTERESTS (OF ALL PERSONS IN, TO AND WITH RESPECT TO THE EXCESS POLICY, INCLUDING WITHOUT LIMITATION ANY AND ALL CLAIMS AGAINST AIG SPECIALTY), WHETHER ARISING PRIOR TO, DURING, OR SUBSEQUENT TO THE BANKRUPTCY CASES OR IMPOSED BY AGREEMENT, UNDERSTANDING, LAW, EQUITY OR OTHERWISE. ANY AND ALL SUCH INTERESTS SHALL ATTACH TO THE SETTLEMENT AMOUNT WITH THE SAME VALIDITY, PRIORITY, FORCE, AND EFFECT AS SUCH INTEREST HOLDERS HAD IN THE EXCESS POLICY PRIOR TO THE ENTRY OF THIS ORDER. NOTHING CONTAINED HEREIN IS INTENDED TO NOR SHALL BE DEEMED TO CONSTITUTE A DETERMINATION OF THE EXTENT, VALIDITY OR PRIORITY OF ANY SUCH INTERESTS THAT MAY BE ASSERTED AGAINST THE SETTLEMENT AMOUNT.

G. PURSUANT TO SECTION 105(A) AND 363 OF THE BANKRUPTCY CODE, ALL PERSONS WHO HAVE HELD OR ASSERTED, WHO HOLD OR ASSERT, OR WHO MAY IN THE FUTURE HOLD OR ASSERT ANY CLAIM OR INTEREST OF ANY KIND OR NATURE AGAINST OR IN FREEDOM, THE ESTATE, THE POLICIES, OR AIG SPECIALTY (AS DEFINED IN THE SETTLEMENT AGREEMENT) BASED UPON, ARISING UNDER OR OUT OF, DERIVED FROM OR ATTRIBUTABLE TO (I) ACTIVITIES THAT GIVE RISE TO CLAIMS UNDER THE POLICIES, OR (II) THE

POLICIES, INCLUDING WITHOUT LIMITATION ANY CLAIM ARISING FROM OR RELATED TO THE INCIDENT, AND ANY EXTRA-CONTRACTUAL CLAIM, INSURANCE COVERAGE CLAIM OR DIRECT ACTION CLAIM, WHENEVER OR WHEREVER ARISING OR ASSERTED (INCLUDING ALL THEREOF IN THE NATURE OF OR SOUNDING IN TORT, CONTRACT, WARRANTY OR ANY OTHER THEORY OF LAW, EQUITY OR ADMIRALTY) SHALL BE AND HEREBY ARE PERMANENTLY STAYED, RESTRAINED AND ENJOINED FROM ASSERTING ANY SUCH CLAIMS OR INTERESTS AGAINST AIG SPECIALTY (AS DEFINED IN THE SETTLEMENT AGREEMENT) AND FROM CONTINUING, COMMENCING, OR OTHERWISE PROCEEDING OR TAKING ANY ACTION AGAINST AIG SPECIALTY TO ENFORCE SUCH INTERESTS OR CLAIMS OR FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING, RECOVERING OR RECEIVING PAYMENTS FROM AIG SPECIALTY WITH RESPECT TO ANY SUCH CLAIM OR INTEREST.

H.    FROM THE DATE ON WHICH THE APPROVAL ORDER BECOMES A FINAL ORDER, ANY AND ALL CLAIMS OR INTERESTS THAT ARE ENJOINED PURSUANT TO PARAGRAPH G HERETO SHALL ATTACH EXCLUSIVELY TO THE SETTLEMENT AMOUNT, SUBJECT TO THE TERMS AND CONDITIONS OF THE SETTLEMENT AGREEMENT OR AS OTHERWISE DIRECTED BY THE COURT.

I.    Notwithstanding any prior orders of this Court, upon the Approval Date, AIG Specialty shall have no further responsibility to pay the fees or expenses of any experts or other professionals retained by or on behalf of Freedom in connection with or in any way relating to the Incident or claims or losses arising from the Incident.

J.  AIG Specialty is not, and shall not be deemed to be, successors to Freedom or its Estate by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Settlement Agreement or otherwise.  AIG Specialty shall not assume any liabilities of Freedom or its Estate.

K.  The transactions contemplated by the Settlement Agreement, including without limitation the sale of the Excess Policy to AIG Specialty free and clear of all Interests, are undertaken by AIG Specialty in good faith, as that term is used in Section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Policies and the transactions contemplated by the Settlement Agreement shall not affect the validity of the sale of the Excess Policy to AIG Specialty, unless such authorization is duly stayed pending such appeal.  AIG Specialty is a purchaser in good faith of the Excess Policy and shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

L.  Pursuant to Bankruptcy Rule 9019, the settlement and mutual release of Claims as set forth in the Settlement Agreement are hereby approved as of the Execution Date of the Settlement Agreement.  This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(g).

M.  The failure specifically to include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Settlement Agreement be authorized and approved in its entirety.

N.  This Court shall retain jurisdiction to interpret and enforce the provisions of this Order and the Settlement Agreement in all respects, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions

contemplated under the Settlement Agreement. Such jurisdiction shall be retained even if the Bankruptcy Cases are closed, and the Bankruptcy Cases may be reopened for such purpose.

O. Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Settlement Agreement and this Order.

P. The Debtor, through its Chief Restructuring Officer (the "CRO"), shall hold the Settlement Amount in a separately segregated account and may invest the same in short term certificates of deposit with a maturity of not more than ninety (90) days. The CRO shall not distribute or otherwise expend any portion of the Settlement Amount without prior authorization pursuant to an order of this court or another Court of competent jurisdiction.

It is so **ORDERED.**

Entered: _____

                                          _____
                                          United States Bankruptcy Judge