IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In Re:

**FREEDOM INDUSTRIES, INC.**　　　　　　　　　　　　　Case No.  14-bk-20017
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
　　**Debtor in Possession.**

### OBJECTION OF ENVIRONMENTAL CONSULTANT
### ARCADIS U.S., INC. TO AMENDED DISCLOSURE STATEMENT

ARCADIS U.S., Inc., ("ARCADIS"), by Counsel Joe M. Supple, objects to the Debtor's Amended Disclosure Statement on the grounds that the disclosure statement provides insufficient information to allow ARCADIS and other creditors to make an informed judgment about the plan.  Through June 30, 2015, ARCADIS has filed fee and expense applications totaling $270,875.69 (this amount includes $12,085.20 of approved fees that this Court directed the Debtor to pay in March 2015).  The fees and expenses were incurred in providing post-petition environmental services for the preservation of the estate and in furtherance of the Debtor's compliance with West Virginia environmental laws and remediation of the Debtor's Etowah River Terminal.  The Debtor's Amended Disclosure Statement provides for the exclusion of ARCADIS fees and expenses from the plan and the accompanying plan of reorganization is therefore not confirmable on its face and should not be served on creditors in its current form.

### Retention of ARCADIS

1.　　On July 2, 2014 this Court entered an Order approving the expedited application of the Debtor to employ and retain ARCADIS as environmental consultant.

2.　　ARCADIS began providing services immediately upon this Court's authorization to expeditiously address the concerns of this Court, the public and of WVDEP in the managed demolition and decommissioning of the Debtor's bulk storage operations at the Etowah Facility,

1

wastewater disposal, storm water management and other matters to allow the Debtor to fully implement the Remediation Plan and the terms of the WVDEP Consent Order.

      3.      ARCADIS initially agreed to provide eight weeks of on-site project management oversight (Task 1) at a cost not to exceed $48,300 and three weeks of onsite demolition and decommissioning support (Task 2) at a cost not to exceed $18,045. ARCADIS further agreed to provide technical support (Task 3) to the Debtor as specific tasks are identified as work progresses. The Debtor and ARCADIS established an initial funding of $100,000 for technical support to be billed on a time and materials basis under the discretion of the Chief Restructuring Officer.

      4.      As a further condition precedent to the retention of ARCADIS, the Debtor paid a $100,000 retainer to ARCADIS to be applied against the final $100,000 of fees and expenses invoiced by ARCADIS and approved by the Court.

      5.      On September 4, 2014, Freedom and ARCADIS entered into an expanded engagement and retention agreement providing that ARCADIS would continue to be responsible for (i) ongoing site management (Task 1), (ii) ongoing demolition and decommissioning support with respect to the remaining tanks (Task 2), and (iii) ongoing technical support for various environmental matters as approved by the CRO (Task 3). Through the end of October 2014, ARCADIS estimated additional costs, on a time and materials basis and subject to Court approval, in an amount not to exceed $83,700 with respect to Task 1, $30,075 with respect to Task 2, and $150,000 with respect to Task 3. Accordingly, the total estimated costs of completing Tasks 1, 2 and 3, through the end of October 2014 pursuant to the July 2 and September 4 engagement agreements was $132,000 for Task 1, $48,120 for Task 2, and $250,000 for Task 3, total for all three tasks not to exceed $430,120.

6. Under the September 4, 2014 expanded engagement and retention agreement, ARCADIS also agreed to provide Facility Investigation and Reporting services (Task 4). ARCADIS agreed to develop and complete a detailed water and soil analysis program at an estimated cost not to exceed $305,110. The purpose of this work is to determine the extent of remediation required and for entry into the VRRP.

7. The expanded employment of ARCADIS for Tasks 1, 2, and 3 and for completion of Task 4 by an undetermined date was approved by this Court on September 9, 2014.

8. On October 10, 2014, Freedom and ARCADIS entered into an expanded engagement and retention agreement providing that ARCADIS would continue to be responsible for (i) ongoing site management (Task 1), (ii) ongoing demolition and decommissioning support with respect to the remaining tanks (Task 2), and (iii) ongoing technical support for various environmental matters as approved by the CRO (Task 3). With regard to Task 1, ARCADIS estimated that budgeted costs and expenses would be sufficient to fund the services performed by ARCADIS. With regard to Task 2, ARCADIS provided onsite support during the decommissioning and demolition activities. However, completion of those activities took two weeks longer than previously budgeted. For the additional onsite demolition and decommissioning support during the additional two week period in October, the cost was expected to be an additional $10,000. With regard to Task 3, ARCADIS estimated that additional funding of $150,000 would be necessary to complete the work. The estimated and budgeted costs to complete Task 4 remained unchanged.

9. The Court approved the expanded engagement and retention agreement on October 23, 2014.

10. On March 6, 2015, ARCADIS filed a motion for authority to provide ongoing services to the Debtor on the grounds that the employment period and budget previously approved by the Court had expired. At the time of the motion, ARCADIS fees and expenses were within the budgeted amounts approved by the Debtor and the Court.

11. By Order entered March 20, 2015, this Court authorized ARCADIS to continue working and recognized that the services performed by ARCADIS are essential services necessary to ensure DIP compliance with the requirements in place by the DEP for acceptance into the Voluntary Remediation and Redevelopment Program ("VRP").

### Chemstream Settlement

12. In May 2015, ARCADIS submitted a proposal for the ongoing engagement of ARCADIS to assist the Debtor under the VRP. The proposal provided a budget of $925,000 for specific tasks to be billed on a time and material basis, excluding certain costs for water collection, soil removal and for unknown costs of implementing the final remedy. ARCADIS further requested payment of $188,000 for fees and expenses incurred through April 30, 2015.

13. Subsequently, the Debtor, Chemstream, WVDEP and other parties agreed to settlement terms requiring that payment of all future fees and expenses of the environmental contractor be subject to the terms and provisions of a <u>progress payment plan, in form and substance acceptable to WVDEP</u>. Over a period of four weeks, and at a substantial cost to ARCADIS, ARCADIS submitted and responded to multiple proposals for the ongoing engagement of ARCADIS under a progress payment scenario and within the financial cap established by the settlement agreement.

14. The progress payment plan provided for a substantial hold back of ARCADIS fees until certain milestones were met under each task.

4

15. On July 1, 2015, approximately one-half hour prior to the hearing to consider the Chemstream settlement, ARCADIS learned that WVDEP had decided to seek an alternative Licensed Remediation Specialist. ARCADIS believed that after granting substantial concessions an agreement was within reach and was greatly disappointed to learn of the decision of WVDEP to seek an alternate professional environmental consulting firm.

16. On July 8, 2015, this Court approved the Chemstream settlement.

17. Following entry of the Order approving the settlement, ARCADIS at the request of the Debtor, agreed to additional concessions including an additional hold-back percentage. WVDEP declined to accept the proposal offered by ARCADIS and the Debtor.

18. On July 20, 2015, the Debtor filed a motion to employ and compensate Core Environmental Services, Inc. as Debtor's Licensed Remediation Specialist. The engagement agreement, approved by WVDEP, provides for the retention of Core Environmental Services on a time and material basis excluding certain costs for water collection, soil removal and for unknown costs of implementing the final remedy. The costs projected by Core Environmental Services exceed the costs projected by ARCADIS. Further, the engagement agreement with CORE does not provide for a progress payment plan.

### Disclosure Statement

19. Section 1125(b) of the Bankruptcy Code provides that a plan proponent, or opponent, may not solicit acceptances or rejections of a plan "after commencement" of a reorganization case "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." *See* 11 U.S.C. § 1125(b). Adequate information is "information of a kind, and in sufficient detail, as far as is reasonably

practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan..." *See* 11 U.S.C. § 1125(a)(1). A "typical" investor, in turn, is defined as an investor having (i) a claim or interest in the relevant class, (ii) a relationship with the debtor such as the holders of other claims or interests in the class generally have, and (iii) an ability to obtain information from sources other than the section 1125 disclosures such as holders of claims or interests in the class generally have. *See* 11 U.S.C. § 1125(a)(2).

20. At the time the Debtor filed its Amended Plan and Disclosure Statement, the Debtor and ARCADIS had reached an agreement for the ongoing engagement of ARCADIS. Despite significant efforts by ARCADIS and the Debtor, WVDEP approval was not obtained and therefore funds set aside in the Chemstream settlement are now allegedly unavailable for payment of ARCADIS fees and expenses.

21. On July 7, 2015, ARCADIS filed a motion for payment of its fees and expenses from the ERT fund established under the Chemstream settlement. WVDEP objected to the motion on the grounds that the Chemstream settlement provides for payment of ARCADIS fees in the amount of $188,000 only upon "ARCADIS['s] ent[ry] into an [engagement] agreement with Freedom acceptable to WVDEP."

22. Based upon the engagement agreement of Core Environmental approved by WVDEP, it is apparent that WVDEP had no intent of agreeing to reasonable terms for the continuing engagement of ARCADIS.

23.  Regardless of whether the administrative claim of ARCADIS, in an amount approved by the Court, is paid from the ERT fund or from other funds available to the Debtor, the claim of ARCADIS is material and must be addressed by the Debtor prior to soliciting votes on the Plan.

Respectfully Submitted,  
ARCADIS U.S. Inc.,  
By Counsel,

 /s/ Joe M. Supple  
Supple Law Office, PLLC  
801 Viand Street  
Point Pleasant, WV  25550  
304.675.6249  
joe.supple@supplelaw.net

## Certificate of Service

I, Joe M. Supple, counsel for ARCADIS U.S., Inc., certify that a true copy of the foregoing OBJECTION OF ENVIRONMENTAL CONSULTANT ARCADIS U.S., INC. TO AMENDED DISCLOSURE STATEMENT was served by this Court's CM/ECF system on July 23, 2015 to all parties having registered in this case under the Court's CM/ECF system.

 /s/ Joe M. Supple