**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| FREEDOM INDUSTRIES, INC. | ) | |
| | ) | Case No. 14-20017-RGP |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FREEDOM INDUSTRIES, INC. BANKRUPTCY SUMMARY**
**OVERVIEW OF THE SECOND MODIFIED AMENDED PLAN OF LIQUIDATION AND SECOND MODIFIED**
**AMENDED DISCLOSURE STATEMENT**

**BARTH & THOMPSON**

Stephen L. Thompson (WV 3751)
J. Nicholas Barth (WV 255)
Barth & Thompson
P.O. Box 129
Charleston, West Virginia 25321
Telephone: (304) 342-7111
Facsimile: (304) 342-6215

and

**MCGUIREWOODS LLP**

Mark E. Freedlander (PA 70593)
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA  15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050

Co-Counsel for the Debtor,
Freedom Industries, Inc.

Freedom Industries, Inc. Bankruptcy Summary
Overview of the Second Modified Amended Plan of Liquidation and Second Modified Amended Disclosure Statement

**This overview is intended solely to provide general information and does not constitute legal advice. You should consult with legal counsel familiar with your particular circumstances rather than relying on the information contained in this Summary.**

There is a chapter 11 bankruptcy case involving Freedom Industries, Inc. ("Freedom"). Freedom filed for bankruptcy protection as a result of a chemical spill incident (the "Incident") that occurred in Charleston, West Virginia on January 9, 2014.

**If you were affected by the January 9, 2014 chemical spill and timely filed a proof of claim with the Bankruptcy Court, you have a right to vote on the plan that governs how your claim may be paid.** That plan is called a plan of liquidation (the "Plan"). Those that have claims against Freedom that arise from or relate to the Incident are generally referred to in the Freedom bankruptcy case as holders of "Spill Claims."

Freedom is providing this Summary to give holders of Spill Claims a general overview of the enclosed materials regarding the Plan.

**What Debtor is involved in this case?**

The Debtor in this case is Freedom Industries, Inc. No other entity is involved in this bankruptcy case.

**What is Chapter 11?**

Chapter 11 of the Bankruptcy Code permits a debtor (the bankruptcy filer) to reorganize its business or liquidate (sell) its assets for the benefit of creditors, interest holders, claimants and other parties involved. The main objectives of Chapter 11 are to: (1) propose a plan of reorganization (to manage debt) or liquidation (to sell off assets in order to pay debt); (2) have eligible claim holders or investors vote to accept or reject the plan, and, if the court approves the plan, (3) carry out the plan.

**What is a Disclosure Statement?**

You have received this Summary because you filed a claim in the Freedom Chapter 11 bankruptcy case. **[**The Bankruptcy Court overseeing the Freedom bankruptcy case has made a determination that this Summary provides holders of Spill Claims adequate information to make a decision about voting on the Plan. This Summary is a form of Disclosure Statement approved by the Bankruptcy Court in the Freedom case for circulation to holders of Spill Claims.**]** The Disclosure Statement contains a summary of information about the case, including detailed information about the Incident and significant events that have occurred and are expected to occur during the Chapter 11 case. The Disclosure Statement also provides more detail about the Plan, what happens if the Plan is confirmed, and how payments will be made to those with claims against Freedom, including those holding Spill Claims. In addition, the Disclosure Statement discusses the process of confirming the Plan and the voting procedures that holders of claims and equity interests must follow for their votes to be counted. **You may obtain an actual copy of the Disclosure Statement by contacting Susan Harding at 412-667-6075 or by visiting the following website www.wvsb.uscourts.gov/.**

**Are there other parties involved in funding the Plan?**

Yes.  There are several settlements involved in the Freedom bankruptcy case either previously approved by the Bankruptcy Court or set forth in the Plan that provide the bases for funding of the Plan.  In exchange for these settlements that include either payments to the Freedom bankruptcy estate or allow Freedom access to funds that it would not otherwise be able to obtain without significant litigation, these parties will receive a release of liability from the Freedom bankruptcy estate.  This means that these parties cannot be sued by Freedom after the bankruptcy case is finalized.   These parties include:

- Chemstream Holdings, Inc. and related parties including J. Clifford Forrest.  These parties are collectively referred to in the Plan as "Chemstream." Chemstream Holdings, Inc. is the sole shareholder of Freedom and J. Clifford Forrest was the sole director of Freedom as of the date that it filed for bankruptcy protection.

- Dennis Farrell, Charles Herzing and William Tis and related parties.  These parties are collectively referred to in the Plan as the "Former Ds and Os."  These parties were the officers and directors of the entities that were consolidated into Freedom as of the date of the sale transactions that occurred in mid-December 2013

- Gary Southern and related parties.  These parties are collectively referred to in the Plan as "Southern".   Southern was the President of Freedom as of the date of the Incident.

**The Freedom Plan.**

The primary purposes of the Plan is to move forward with finalizing remediation of the Etowah River Terminal as agreed upon by Freedom and West Virginia Department of Environmental Protection ("WVDEP") and to compensate parties with claims in the  Freedom case with funds remaining after payment to the remediation fund called the ERT Remediation Fund under the Plan. All affected people and entities are classified by the type of claim they have against the Freedom bankruptcy estate ("Classes").   All Classes under the Plan other than equity or ownership interests will receive some distribution under the Plan.

The holders of Spill Claims of $3,000 or less will participate in a one-time distribution from a total pool of funds of $500,000.  It is estimated that holders of Spill Claims of $3,000 or less will receive a distribution of approximately 44% of the amount of the claim that they have filed.   It is a goal of the Plan to make distributions to holders of Spill Claims of $3,000 or less before the end of calendar year 2015.  These claims are Class 4 Claims under the Plan.

The holders of Spill Claims in amounts in excess of $3,000 will participate in future distributions from an initial pool of funds of just under approximately $1,600,000 as well as future recoveries from litigation claims.   The timing of return and amount of return to holders of Spill Claims in excess of $3,000 is uncertain at this time.  These claims are Class 5 Claims under the Plan.

The Plan has been heavily negotiated among Freedom, lawyers for general trade creditors, the holders of Spill Claims, WVDEP and other interested parties.   The Plan requires a substantial payment ($1,400,000) to a remediation fund that will be used for final remediation of the Etowah River Terminal in a manner approved by WVDEP.   The Plan also provides for payment of claims entitled under

bankruptcy law to be paid before the holders of Spill Claims.  More detailed information about the Plan can be found in the Plan itself which is included with this Summary as well as the Disclosure Statement.   Also, a summary of funds expected to be available at the time of confirmation of the Plan and the manner in which these funds will be paid under the Plan is attached to this Summary.

**How will funds be distributed?**

The Plan provides for the appointment of a Spill Claim Plan Administrator.  Under the Plan, it is the responsibility of the Spill Claim Plan Administrator to promptly distribute a total of $500,000 to the holders of all Spill Claims of $3,000 or less.  The Spill Claim Plan Administrator is also responsible for determining the best approach for using or distributing the approximately $1,600,000 that will be available for the benefit of the holders of Spill Claims in amounts over $3,000 and also make decisions about pursuing potential litigation claims.   These determinations by the Spill Claim Plan Administrator will occur with input from a group of class action lawyers from the Charleston, WV area, and also with approval by the Bankruptcy Court.

**How will Spill Claims in unliquidated amounts or amounts not yet determined be treated?**

Where holders of Spill Claims have filed claims in an amount that is "unliquidated" or yet to be determined, these claims will all be treated as claims in an amount in excess of $3,000 or Class 5 Claims.  This means that for all holders of Spill Claims who have filed claims in an unliquidated or yet to be determined amount, these claims will not participate in the one-time distribution of a total amount of $500,000.  The Spill Claim Plan Administrator will determine an approach to address unliquidated claims as well as a process for evaluating Spill Claims that are larger than $3,000.   It is the responsibility of the Spill Claim Plan Administrator to develop a process for reviewing, allowing and then paying holders of Spill Claims in unliquidated amounts or amounts in excess of $3,000.  The exact process and timing of the process for review and allowance of such claims remains to be determined.

**How will the voting process to approve the Plan work?**

Some claims are not classified because they are required by applicable bankruptcy law to be paid in full under the Plan.   All Classes other than equity ownership will receive a ballot and have a right to vote to accept or reject the Plan.  All holders of Spill Claims have a right to vote to accept or reject the Plan.

**When must my ballot be received?**

To be counted, the ballot indicating your acceptance or rejection of the Plan must be received by Susan Harding [ADDRESS] no later than **4:00 p.m. Eastern Prevailing Time, on [Month/Day], 2015**.  If you did not receive a ballot but believe that you should have, call 412-667-6075 or email sharding@mcguirewoods.com.

**What happens if I do not file a ballot on time?**

If your ballot is not submitted and received by **4:00 p.m. Eastern Prevailing Time on [Month/Day], 2015** you will be bound by the terms of any Plan approved by the Freedom Bankruptcy Court, and your claims against Freedom will be treated in accordance with the Plan.

**What if I do not like the Plan?  Can I object to the Plan?**

Yes.  If you object to the Plan, you must file your objection by mail or courier on or before **[x:xx x.m. Eastern Prevailing Time on [Month/Day], 2015**.  Your objection must be filed on time and must follow guidelines set in the Bankruptcy Court order approving the Disclosure Statement or it may not be considered by the Bankruptcy Court.

**The Confirmation Hearing.**

The Bankruptcy Court will hold a confirmation hearing at **xx:xx x.m. Eastern Prevailing Time on [Month/Day], 2015** at the United States Bankruptcy Court for the Southern District of West Virginia, Robert C. Byrd U.S. Courthouse, 300 Virginia Street, East, Charleston, WV 25301.  Judge Ronald G. Pearson will oversee the hearing.  The Bankruptcy Court may adjourn the hearing from time to time without further notice except for an announcement of the adjourned date and time at the hearing or any adjournment of the hearing.

**What happens if the Plan is confirmed?**

If the Plan is confirmed, all claims, including holders of Spill Claims against Freedom will be "released" and the holders of these claims will be barred from pursuing these claims in court.   The Plan provides for the release of Chemstream, the Former Ds and Os and Southern.  If the Plan is confirmed, neither Freedom, or any creditor asserting claims through Freedom, may assert claims or file litigation against these parties or against Freedom.

**Do other parties support the Plan?**

The Plan is a heavily negotiated document.   In the Freedom bankruptcy case, an official committee was appointed for purposes of representing the interests of all unsecured creditors.  This committee, the Official Committee of Unsecured Creditors (the "Committee") actively participated in negotiations relating to the Plan and supports confirmation of the Plan.   Certain holders of Spill Claims represented by legal counsel in class action litigation relating to the Incident also participated in negotiations relating to the Plan.   The group of lawyers that participated in these negotiations are referred to under the Plan as "Spill Claim Counsel"   Spill Claim Counsel supports confirmation of the Plan.    Also, WVDEP actively participated in negotiations relating to the Plan.   WVDEP supports confirmation of the Plan.

**How do I get more information?**

This information is only a summary.  While the Bankruptcy Court has approved this Summary as a substitute for the Disclosure Statement, you are encouraged to read the Plan and Disclosure Statement.  You should also speak to your own lawyer or other advisor to the extent that you wish to do so.

**Projected Sources of Funding as of Effective Date of Plan of Liquidation**

| | |
|---|---|
| Proceeds of December 2013 Sale Escrow | $2,820,000 |
|     Less: Remediation Advance from Escrow | [$ 100,000] |
| Gross AIG Settlement Proceeds | $3,199,318 |
|     Less: Agreed Deduction for Emergency Services (per settlement) | [$ 90,827] |
| Southern Cash Settlement Consideration to Estate | $ 300,000 |
| | |
| Total Projected Funding for Plan on Effective Date | $6,128,491 |

**Projected Uses of Funding as of Effective Date of Plan of Liquidation**

| | |
|---|---|
| Additional Funds to ERT Remediation | $1,400,000 |
| IRS Secured Claim (P&I) | $584,525 |
| Estimated Allowable 503(b)(9) | $450,000 |
| Priority Tax Claims | $ 2,000 |
| General Unsecured Claim Effective Date Distribution | $350,000 |
| Convenience Spill Class Distribution | $500,000 |
| Fixed Plan Payments | $3,286,525 |
| Funds Remaining After Fixed Plan Payments | $2,841,966 |
|     Less Reimbursement for Plan-Related Expenses | [$50,000] |
| Funds Remaining for Class 5/Professional Fee Escrow Split | $2,791,966 |
| | |
| Effective Date Class 5 Spill Claim Administrator Distribution | $1,595,983 |
| Effective Date Professional Fee Escrow Distribution | $1,195,983 |

Note: The financial summary does not include the $1,100,000 portion of the Chemstream Contribution[1] provided for under the Chemstream Settlement, which amount has previously been paid into the ERT Remediation Fund.

---

[1] Capitalized terms not defined in this Summary have the mean ascribed to them in the Plan.