## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| **FREEDOM INDUSTRIES, INC.** ) | |
| ) | Case No. 2:14-bk-20017 |
| Debtor. ) | |
| ) | |

## ORDER
## CONFIRMING PLAN OF LIQUIDATION

**BARTH & THOMPSON**

Stephen L. Thompson (WV 3751)
J. Nicholas Barth (WV 255)
Barth & Thompson
P.O. Box 129
Charleston, West Virginia 25321
Telephone: (304) 342-7111
Facsimile: (304) 342-6215

and

**MCGUIREWOODS LLP**

/s/ Mark E. Freedlander
Mark E. Freedlander (PA 70593)
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050

Co-Counsel for the Debtor,
Freedom Industries, Inc.



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| FREEDOM INDUSTRIES, INC. ) | |
| ) | Case No. 2:14-bk-20017 |
| Debtor. ) | |
| ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTOR'S THIRD MODIFIED AMENDED CHAPTER 11 PLAN OF LIQUIDATION DATED AUGUST 12, 2015

On January 17, 2014 Freedom Industries, Inc. ("Freedom" or the "Debtor") in the above-captioned case commenced a chapter 11 case (the "Case") in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

The Debtor has managed its property and affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 5, 2014, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee"). To date, no trustee or examiner has been requested or appointed in the Case.

By order dated March 18, 2014 [Docket No. 228], the Bankruptcy Court appointed Mark Welch as Chief Restructuring Officer (the "CRO") of the Debtor. The CRO continues to remain in place as the sole executive of the Debtor.

On June 17, 2015, the Debtor filed its Amended Plan of Liquidation dated June 17, 2015 [Docket No. 815] (the "Amended Plan") and accompanying Amended Disclosure Statement dated June 17, 2015 [Docket No. 815] (the "Amended Disclosure Statement"). On July 26, 2015 a First Modified Amended Disclosure Statement was filed [Docket No. 852] which incorporated as an exhibit a First Modified Amended Plan of Liquidation dated July 26, 2015.

One objection (the "Arcadis DS Objection") was filed in opposition to approval of the Modified Amended Disclosure Statement by Arcadis US, Inc. ("Arcadis"). A hearing on approval of the adequacy of the Second Modified Amended Disclosure Statement was conducted by the Bankruptcy Court on July 28, 2015 (the "Disclosure Statement Hearing"). On August 7,

2015, the Debtor filed its Second Modified Amended Plan of Liquidation dated August 7, 2015 [Docket No. 865] (the "Second Modified Amended Plan") and accompanying Second Modified Amended Disclosure Statement dated August 7, 2015 [Docket No. 865] (the "Second Modified Amended Disclosure Statement"). On August 10, 2015, the Bankruptcy Court entered an order sustaining the Arcadis DS Objection [Docket No. 871] (the "Order Denying Approval")

On August 12, 2015, the Debtor filed (i) a Third Modified Amended Plan of Liquidation dated August 12, 2015 [Docket No. 874] (the "Plan")[1]; (ii) an accompanying Third Modified Amended Disclosure Statement dated August 12, 2015 [Docket No. 872] (the "Disclosure Statement"); (iii) a CRO Time Report For The Period Of September 1, 2014 Through June 30, 2015; and (iv) a Stipulated Order Relating to Professional Fees and Expenses [Docket No. 876] (the "Initial Professional Fee Stipulated Order").

In response to the Order Denying Approval, on August 14, 2015, WVDEP filed a Motion To Amend Or Alter The Order Denying Approval [Docket No. 880] (the "WVDEP Reconsideration Motion"), and the Debtor filed a Response to the WVDEP Reconsideration Motion on August 19, 2015 [Docket No. 882]. On August 25, 2015, in an effort to resolve the Order Denying Approval and the WVDEP Reconsideration Motion, the Debtor filed a Stipulated Order Resolving the Fee and Expense Claim of Arcadis US, Inc. [Docket No. 883] (the "Arcadis Stipulated Order"). The Arcadis Stipulated Order had the effect of amending and modifying the Initial Professional Fee Stipulated Order, and as such, all Professionals that were parties to the Initial Professional Fee Stipulated Order also executed the Arcadis Stipulated Order.

On August 26, 2015, in recognition of the several thousand individuals and small companies holding Class 4 and Class 5 Claims who are not likely familiar with the bankruptcy process, the Debtor filed with the Bankruptcy Court a Summary Overview of the Plan and Disclosure Statement [Docket No. 884] (the "Summary Overview") and a proposed form of ballot for accepting or rejecting the Plan [Docket No. 885] (the "Ballot").

By order dated August 26, 2015 [Docket No. 886] (the "Disclosure Statement Order"), the Bankruptcy Court approved the Summary Overview as a form of Disclosure Statement and authorized and directed the Debtor to serve the Disclosure Statement Order, the Summary Overview and the Ballot, among other items, on all creditors and parties in interest. The Disclosure Statement Order also (i) established September 28, 2015 at 5:00 p.m. Prevailing

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Plan.

Eastern Time as the deadline for voting on the Plan and/or asserting objections to the Plan (the "Voting/Objection Deadline"). A certificate of service evidencing compliance with the service requirements of the Disclosure Statement Order was filed by undersigned counsel on September 3, 2015 [Docket No. 892].

Only one objection to the Plan was timely filed, and that objection was filed by the Internal Revenue Service [Docket No. 887]. On September 18, 2015, the Internal Revenue Service withdrew its objection to the Plan [Docket No. 898].

On September 30, 2015, the Debtor filed the Report of Balloting with Respect to the Third Modified Amended Chapter 11 Plan of Liquidation (the "Report of Balloting")

The Confirmation Hearing commenced and was concluded on October 2, 2105.

NOW, THEREFORE, the Court having considered the Plan, the Disclosure Statement, the Certificate of Service with respect to the Disclosure Statement Order, the Report of Balloting, the Declaration of Mark Welch in Support of Confirmation of the Plan, the Debtor's Memorandum in Support of Confirmation of the Plan, all evidence proffered and the arguments of counsel at the Confirmation Hearing, and the entire record of the Debtor's Case, and after due deliberation thereon and good cause appearing therefor, this Bankruptcy Court hereby makes and issues Finding of Facts and Conclusions of Law and hereby orders:

## FINDING OF FACTS AND CONCLUSIONS OF LAW[2]

A.  <u>Jurisdiction and Venue</u>. This Bankruptcy Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Venue before this Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O). The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code.

B.  <u>Burden of Proof</u>. The Debtor, as the proponent of the Plan, has the burden of proving the elements of section 1129(a) of the Bankruptcy Code by preponderance of the evidence, and, as set forth below, the Debtor has met that burden.

C.  <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket in the Case maintained by the clerk of the Bankruptcy Court, including, without limitation, all

---

[2] This Confirmation Order constitutes this Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

pleadings, notices and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the Case, including, without limitation, the Disclosure Statement Hearing and the Confirmation Hearing.

    D.    <u>The Record</u>. The following record (the "Record") was established to support confirmation of the Plan:

    i.    all documents identified by the Debtor at the Confirmation Hearing, including, without limitation, the Plan, the Disclosure Statement, the Declaration of Mark Welch in Support of the Plan, the Memorandum in Support of Confirmation of the Plan, and all exhibits, schedules and attachments thereto and filed in connection therewith, all of which were admitted into evidence without objection;

    ii.    The Certification of Service with respect to the Disclosure Statement Order;

    iii.    The Report of Balloting;

    iv.    the entire record of the Case and the docket maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered and evidence and argument made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Case, as to all of which the Bankruptcy Court took judicial notice at the Confirmation Hearing; and

    v.    the statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with the Bankruptcy Court in support of, in opposition to or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the record in support of confirmation of the Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan should be confirmed.

    E.    <u>Resolution of Objections</u>. As presented at the Confirmation Hearing, objections to the Confirmation of the Plan have been withdrawn or resolved. The Plan satisfies all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and is in the best interest of the Debtors and its Estate and supported by the record, and therefore should be

approved. Any of the Objections that were not resolved by agreement on or prior to the Confirmation Hearing should be overruled, or are otherwise disposed of, as set forth herein and on the record of the Confirmation Hearing.

F.  Solicitation and Notice.  To obtain the requisite acceptance of the Plan, on September 3, 2015, the Debtor commenced the solicitation of acceptances and rejections of the Plan by beginning the distribution of the Summary Overview and related materials to holders of Claims against the Debtor classified in Class 1 – Secured IRS Claims; Class 2 – Priority Tax Claims; Class 3 – General Unsecured Claims; Class 4 - Convenience Spill Claims and Class 5 – Spill Claims.

G.  Voting.  As evidenced by the Voting Certification, each class of Claims and Equity Interests either (i) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code; (ii) is not impaired as provided in section 1124 and 1129(a)(8)(B) of the Bankruptcy Code; or (iii) is deemed, under section 1126(g) of the Bankruptcy Code, to have voted to reject the Plan.

H.  Compromises and Settlements Under and in Connection With the Plan.  All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019.

I.  Exculpations, Releases and Injunctions.  Each of (a) the releases by the Debtor as set forth in Sections 11.8 and 11.10 of the Plan; (b) the releases by the holders of claims and interests as set forth in Section 11.9 and 11.11 of the Plan; (c) the injunctions set forth in Sections 11.12 and 11.13 of the Plan that relate to the releases contemplated in Sections 11.8, 11.9, 11.10, and 11.11 of the Plan are: (i) within the jurisdiction of the Court under 28 U.S.C. § 1334(a), 1334(b), and 1334(d); (ii) essential to the implementation of the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) integral elements to the settlements incorporated into the Plan; (iv) confer material benefits on, and are in the best interests of, the Debtor, the Estate, and all creditors; (v) important to the overall objectives of the Plan to resolve claims among or against key parties-in-interest in the Case; and (vi) consistent with sections 105, 1123, and 1129 and other applicable provisions of the Bankruptcy Code. The record is sufficient to support the approval of all release, exculpation, and injunction provisions contained in the Plan.

J.  Executory Contracts and Unexpired Leases.  The Debtor has exercised reasonable business judgment in determining to reject each executory contract and unexpired lease not

previously assumed or rejected under the terms of the Plan and this Confirmation Order. Each rejection of an executory contract or unexpired lease pursuant to Article IX of the Plan will be legal, valid and binding upon the Debtor and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the executory contracts and unexpired leases to be rejected is deemed to be an executory contract or an unexpired lease, as applicable.

K.  Standing. The Debtor has satisfied section 1121 of the Bankruptcy Code in that the Debtor has standing to file a plan. Furthermore, the Plan reflects the date it was filed with the Bankruptcy Court and identifies the entity submitting it as Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

L.  The Plan Complies with the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)). As set forth below and as demonstrated by the record, the Plan, complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable non-bankruptcy law relating to the confirmation of the Plan. In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

M.  Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons. The Debtor's classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity Interest in the Debtor's Estate and was not proposed to create a consenting impaired class and, thereby, manipulate class voting. Article III of the Plan designates classes of Claims and Equity Interests that require classification.

N.  Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

O.  Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article IV of the Plan specifies the treatment of classes and interests under the Plan, including those which are impaired.

P. **No Discrimination (11 U.S.C. § 1123(a)(4))**. The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article IV of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Bankruptcy Court hereby finds that such better treatment does not need to be made available to other members of the class.

Q. **Implementation of Plan (11 U.S.C. § 1123(a)(5))**. The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, appointment of the Spill Claim Plan Administrator and the GC Plan Administrator on the Effective Date.

R. **Prohibition of Issuance of Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))**. The Plan does not provide for the issuance of any securities including non-voting securities; therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

S. **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))**. Article VI of the Plan provides for the Spill Claim Plan Administrator to be governed by the Spill Claim Oversight Committee, subject to the Plan.

T. **Additional Plan Provisions (11. U.S.C. § 1123(b))**. The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

U. **Bankruptcy Rule 3016(a)**. The Plan is dated and identifies the Debtor as the proponent of the Plan, thereby satisfying the requirements of Bankruptcy Rule 3016(a).

V. **Bankruptcy Rule 3016(c)**. In accordance with Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities that would be subject to the injunctive provisions of the Plan to the extent required thereunder.

W. **Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Plan complies fully with the requirements of section 1129(a)(2) of the Bankruptcy Code. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtor has complied with the applicable provisions of Title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice,

disclosure and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by the Bankruptcy Court in connection with the Case.

X. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code. Having examined the totality of the circumstances surrounding the Plan, the Bankruptcy Court has determined that the Plan was proposed in good faith and not by any means forbidden by law. The Plan is the result of extensive arm's-length discussions, debate and/or negotiations among the Debtor and key stakeholders and is overwhelmingly supported by the creditors and other parties-in-interest in the Case. The Plan promotes the objectives and purposes of the Bankruptcy Code.

Y. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. The Plan as modified and/or clarified by Stipulated Orders with Professionals, including, without limitation, Arcadis US, Inc. complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code, subject to the limitations set forth therein.

Z. <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Plan complies fully with the requirements of section 1129(a)(5) of the Bankruptcy Code. Section 5.7 of the Plan provides that on the Effective Date the CRO shall be deemed to resign his position and have no further duty or responsibility related to this respective position. Upon the occurrence of the Effective Date, the Spill Claim Plan Administrator shall be the sole shareholder of Freedom and replace the CRO, subject to oversight by the Spill Claim Oversight Committee. The Spill Claim Plan Administrator is authorized, at his sole discretion, to dissolve Freedom.

AA. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Debtor's business operations have been sold and the Debtor is liquidating. Thus, no rates are being changed that require approval of governmental regulatory commission, and accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable with respect to the Plan.

BB. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the general liquidation analysis in the Disclosure Statement, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests. Furthermore, a liquidation under chapter 7 as set forth in the liquidation analysis would adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Case. Moreover, the increased costs associated with liquidation under chapter 7 would substantially reduce the proceeds available for

distribution. These costs would include, among other things, increased administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee, each of which would be unfamiliar with the Case. In the context of the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtor. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to each of these classes.

CC. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8))</u>. Class 6 –Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below. The Plan, at Section 13.1, specifically reserves the right of the Debtor to pursue a non-consensual confirmation of the Plan pursuant to the "cram-down" provisions of the Bankruptcy Code.

DD. <u>Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims pursuant to Sections 2.1, 2.2, 2.3 and 4.2 of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

EE. <u>Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. As set forth in the Voting Declaration, Classes 1, 3, 4, and 5 under the Plan voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. No holders of Class 2 Claims submitted any votes.

FF. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information provided in the Declaration in support and Memorandum with respect to section 1129(a)(11) of the Bankruptcy Code (i) is persuasive and credible, (ii) has not been controverted by persuasive evidence and has not been challenged, (iii) is based on reasonable and sound assumptions, and (iv) establishes that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

GG. <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under section 1930 of Title 28 of the United States Code have been paid or will be paid pursuant to section 2.3 of the Plan by the Debtor on the Effective Date, and thereafter by the Spill Claim Plan Administrator as may be required until the Case is closed and a final decree is entered. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

HH. <u>Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16))</u>. Sections 1129(a)(13)-(16) are inapplicable because the Debtor (i) does not provide retiree benefits, (ii) has no domestic support obligations, (iii) is not an individual, and (iv) was a for-profit businesses.

II. <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. The Declaration in support and Memorandum make clear, and the Bankruptcy Court hereby finds and concludes that the Plan does not discriminate unfairly, and is fair and equitable with respect to each rejecting class of creditors, as required by section 1129(b)(1) of the Bankruptcy Code. Class 6 is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code because the holders of such Equity Interests will not receive or retain any property under the Plan on account of their respective Equity Interests. There are no holders of any Equity Interest junior to the Equity Interests of Class 6 who will receive or retain any property under the Plan on account of such junior Equity Interest. Thus, the Plan may be confirmed under section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection by Class 6.

JJ. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan (including previous versions thereof) is the only plan that has been filed in the Case which has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

KK. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The Plan complies fully with the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

LL. <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

MM. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record in the Case, the Debtor, its CRO and attorneys have acted in "good faith" within the meaning of section

1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

NN.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

### DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

1. Pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED.

2. Each of the Objections to the Plan not otherwise withdrawn, resolved or otherwise disposed of is OVERRULED and denied.

3. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Case and was in compliance with the Bankruptcy Code and the Bankruptcy Rules.

4. The following are hereby incorporated by reference into and are an integral part of this Confirmation Order: the Plan, the Arcadis Stipulated Order as modified, and the Initial Professional Fee Stipulated Order.

### Binding Effect

5. The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of all Claims and Equity Interests and their respective successors and assigns, including, without limitation, the Plan Administrators.

### Compromise and Settlements Under the Plan

6. The settlements and compromises set forth in the Plan are approved in all respects.

### Classification and Treatment

7. All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved.

8. The treatment of all Claims and Equity Interests is provided in the Plan and the Plan Supplements shall be, and hereby is, approved.

### Enforceability of Plan and Plan Supplements

9. Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable non-bankruptcy law.

### Authorization to Implement the Plan

10. Upon the entry of this Confirmation Order, the Debtor, the Spill Claim Plan Administrator and the GC Plan Administrator, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate the Plan and to execute, enter into or otherwise make effective all documents arising in connection therewith, prior to, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Bankruptcy Court (unless the Plan requires other or further approval by the Bankruptcy Court) such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including, without limitation, (a) the making of distributions under the Plan, and (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan.

11. On the Effective Date, the CRO is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor.

### Vesting of Assets in the Plan Administrators; Resignation of the Debtor's Director and Officer

12. Upon the occurrence of the Effective Date and except as otherwise provided in the Plan, all equity interests in Freedom existing on the Effective Date shall vest in the Spill Claim Plan Administrator free and clear of all Claims, Equity Interests, Liens, security interests, encumbrances, and other interests.

13. As of the Effective Date, Mark Welch in his capacities as CRO and sole remaining director of Freedom shall be deemed to have resigned on such date and shall have no further ongoing duties to the Debtor to serve as an officer or director. Effective as of the Effective Date, the sole officer and director of Freedom shall be the Spill Claim Plan

Administrator who shall be subject to oversight as provided under the Plan by the Spill Claim Oversight Committee.

### Distribution Record Date

14. As of the close of business on the Distribution Record Date, the registers for each of the Classes of Claims or Equity Interests shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Debtor or the Plan Administrators, as applicable, shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtor and the Plan Administrators, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

### Appointment of Plan Administrators

15. The appointment of Robert Johns as Spill Claim Plan Administrator and GC Plan Administrator is hereby approved. The Plan Administrators shall be compensated in the manner set forth in and consistent with the Plan. The Plan Administrators shall have all powers, rights, duties and protections afforded the Plan Administrators under the Plan.

16. The appointment of Anthony Majestro, Marvin Masters, Johnathan Marshall, Mark Ferguson and Van Bunch as members of the Spill Claim Oversight Committee is hereby approved. Each member of the Spill Claim Oversight Committee shall have all powers, rights, duties and protections afforded the Spill Claim Oversight Committee under the Plan.

17. In furtherance of, and consistent with the purpose of the Plan, the Plan Administrators shall, subject to the terms of the Plan and this Confirmation Order, (i) have the power and authority to hold, manage, sell, and distribute the proceeds of assets of the Debtor, (ii) have the power and authority to hold, manage, sell, and distribute Cash obtained in the exercise of its power and authority, (iii) have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtor the Causes of Action subject to input from the Spill Claim Oversight Committee, (iv) have the power and authority to perform such other functions as are provided in the Plan, and (v) have the power and authority to administer the closure of the Case. The Plan Administrators shall be responsible for all decisions and duties under the Plan, subject to the terms of the Plan and the powers, rights and duties expressly vested in the Spill Claim Oversight Committee.

### Executory Contracts and Unexpired Leases

18. Any executory contract which has not been assumed with the approval of the Bankruptcy Court on or prior to the Confirmation Date shall be deemed a rejected executory contract by the Debtor effective on the Confirmation Date. The Plan shall constitute a motion to reject such executory contracts and the Debtor shall have no liability thereunder, except that any Claim related to a rejected executory contract shall be treated as a General Unsecured Claim subject to filing of a proof of claim in accordance with Section 9.3 of the Plan. Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interest of the Debtor, its Estate, and all parties-in-interest in the Case.

### Releases, Injunctions and Exculpation

19. On the Effective Date, the releases by the Debtor and its Estate of each Released Party shall be effective and binding. On the Effective Date, the release of Preference Actions by the Debtor and its Estate against holders of General Unsecured Claims shall be effective and binding. On the Effective Date, the releases by Chemstream, the Former Ds and Os, Herzing as Sellers' Representative and Southern shall be effective and binding. On the Effective Date, exculpation of the Exculpated Parties provided for at Section 11.7 of the Plan shall be effective and binding. On the Effective Date, the limited third party releases of Southern, provided for at Section 11.11 of the Plan, shall be effective and binding. On the Effective Date, the injunctive provisions of Sections 11.5, 11.12 and 11.13 of the Plan shall be effective and binding.

20. Nothing in the Plan or this Confirmation Order shall be deemed to prevent the Spill Claim Plan Administrator from asserting any Cause of Action not otherwise released in the Plan. Nothing in the Plan or this Confirmation Order shall release or waive any Estate Causes of Action, except for such Causes of Action against the parties released in the Debtor Release under Section 11.8 of the Plan, and all Estate Causes of Action not released under Section 11.8 and 11.10 of the Plan shall be expressly preserved. Pursuant to section 1125(e) of the Bankruptcy Code, the Exculpated Parties shall not be liable for any Cause of Action arising postpetition in connection with or out of the administration of the Case, pursuant to confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed

under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

### Effect of Confirmation

21. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment to the fullest extent provided in section 1146(a) of the Bankruptcy Code. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Retention of Jurisdiction

22. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Case or the Plan; or (c) that relates to the matters set forth in Article XII of the Plan.

### Miscellaneous Provisions

23. The stay in effect in the Debtor's Case pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in Article XI of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing in the Plan shall bar the taking of such actions by the Debtor as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

24. During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue its affairs as a debtor-in-possession, subject to the oversight of

the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

25. Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Case and under the Bankruptcy Code.

26. In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the terms and provisions of the Plan shall control and govern.

27. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

28. The Spill Claim Plan Administrator shall not have or incur any liability in connection with or arising out of the ownership or control of the uninsured real property known as the Etowah River Terminal. In the event that the Spill Claim Plan Administrator is not otherwise able to dispose of or sell the Etowah River Terminal, the Spill Claim Plan Administrator may donate the property in accordance with Section 5.4 of the Plan and subject to the exemptions provided for under Section 14.5 of the Plan.

29. As soon as practicable after the Effective Date, the Spill Claim Plan Administrator shall file on the docket and serve upon parties who have entered their appearance notice of the occurrence of the Effective Date.

30. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d) and 7062, to the extent applicable, the Bankruptcy Court finds that there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

31. Sections 6.8 and 7.5 of the Plan relating to minimum distributions are deleted.

32. The receipt of the Southern Contribution and the settlement consideration by the Good Plaintiffs from Southern are not conditions to the Effective Date. The release of Southern provided for at Sections 11.8 and 11.11 of the Plan are effective only upon receipt by the estate of the Southern Contribution and the Good Plaintiffs of their settlement consideration from Southern. In the event that the Southern Contribution is not paid on the Effective Date, the distribution to the Spill Claim Administrator with respect to Class 5 Claims will be reduced by

$300,000 and the Southern Contribution, when made, will be paid to the Spill Claim Plan Administrator for the benefit of Class 5 Claims.

ENTERED:  OCT - 6 2015

_____
Ronald G. Pearson, Judge